Edwin Glen BIGON, Appellant,

v.

The STATE of Texas.

Nos. PD–1769–06, PD–1770–06.

Court of Criminal Appeals of Texas.

Jan. 16, 2008.

Joseph A. Turner, Christopher M. Perri, Austin, for Appellant.

Jeffrey Van Horn, State Prosecuting Atty., for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

In two separate indictments,[1] Appellant was indicted for the following offenses: two counts of felony murder, with the underlying felony of driving while intoxicated with a passenger under 15 years of age; two counts of intoxication manslaughter; and two counts of manslaughter.[2] After a one-day bench trial, Appellant was convicted on all six counts, and the judge sentenced him to 18 years' confinement for each count, to be served concurrently. Appellant appealed the trial court's admission of expert testimony, medical records, and test results. Appellant also challenged the legal and factual sufficiency of the evidence supporting his convictions. The court of appeals affirmed the two convictions for felony murder, but vacated the other four convictions on the unassigned error of violation of double-jeopardy guarantees of the Eighth Amendment of the United States Constitution. The court of appeals also held that the trial court did not err in admitting the expert's testimony, the medical records, or test results, and held that the evidence was legally and factually sufficient to support the convictions. *Bigon v. State*, Nos. 03–05–00692–CR & 03–05–00693–CR, 2006 WL 2852476, 2006 Tex.App. LEXIS 8756 (Tex.App.-Austin Oct. 4, 2006)(mem. op., not designated for publication). We granted both Appellant's and State's petitions for discretionary review. We affirm the decision of the court of appeals.

### FACTS

Appellant was driving home from a trip with his 8–year–old son. At approximately 8:35 p.m., while cresting a hill, Appellant crossed the middle line of the roadway, slamming head-on into an oncoming vehicle. Both Appellant and his son were injured and two occupants of the other vehicle, the driver and her infant daughter, were pronounced dead at the scene of the accident.

Appellant and his son were airlifted to the hospital to receive treatment for their injuries. At 9:58 p.m., Appellant's blood was drawn by the hospital for lab purposes, and the hospital performed a serum blood analysis to determine the blood-alcohol concentration. Based upon witness reports,[3] the officers responding to the accident scene believed that Appellant's erratic driving had caused the accident. As a result, a second blood sample was taken at approximately 11:35 p.m., at which time Appellant was informed that he was under arrest.[4]

---

1. There were two victims, therefore, the State returned one indictment per victim.

2. Tex. Pen.Code Ann. § 19.02(b)(3) and Tex. Pen.Code Ann. § 49.045; Tex. Pen.Code Ann. § 49.08; Tex. Pen.Code Ann. § 19.04, respectively.

3. A witness testified that he had observed Appellant driving ten to fifteen miles below the speed limit and drifting from the road to the shoulder and across the middle line of traffic prior to the accident.

4. A police officer must require a breath or blood sample if, at the time of the arrest, he reasonably believes that the individual was intoxicated while operating a motor vehicle at the time of the accident and that someone has

Dr. Charles Mott, at the DPS laboratory, analyzed the second blood sample for blood-alcohol content using whole-blood analysis. Serum blood analysis and whole-blood analysis report results use different terminology. Dr. Mott converted the results of the hospital's serum blood analysis into whole-blood analysis terminology and performed a retrograde extrapolation.

## COURT OF APPEALS

In a memorandum opinion, the court of appeals affirmed the convictions for felony murder, vacated the intoxication manslaughter and manslaughter convictions, and overruled all of Appellant's grounds for appeal. Appellant argued six points of error in his appeal, but did not raise the double-jeopardy issue. Although neither party argued this error on appeal, the court of appeals determined that it could be raised for the first time on appeal because it was apparent from the face of the record that the totality of Appellant's convictions stemming from the two indictments constituted double jeopardy.

Following our decision in *Ex parte Ervin*, the court held that there was a multiple-punishments violation. 991 S.W.2d 804 (Tex.Crim.App.1999). Because the offenses of intoxication manslaughter and manslaughter involved the same victims, imposing convictions for both violated the double-jeopardy clause. *Id.* at 817. The court decided that since there was only one act alleged in the indictments that could support the convictions on all three counts, Appellant could not be punished for all three offenses. The court determined that, in this case, felony murder is the same offense as intoxication man-

slaughter and manslaughter for double-jeopardy purposes.

To remedy the violation, the court applied the "most serious offense" test, set out in *Landers v. State*, to decide which convictions to vacate.[5] 957 S.W.2d 558 (Tex.Crim.App.1997). Based on this test, the court of appeals reversed Appellant's convictions for manslaughter and intoxication manslaughter and affirmed the convictions for felony murder.

The second issue that the court addressed was the trial court's denial of Appellant's motion to quash the indictments. Appellant argued that his actions did not constitute a charge of felony murder and that the indictments were flawed because the State never alleged a culpable mental state. The court of appeals conducted a *de novo* review of the sufficiency of the indictment. The court held that a felony murder charge does not require proof of a culpable mental state because the underlying felony provides the culpable mental state. In this case, the underlying felony was felony DWI for driving while intoxicated in a public place with a passenger younger than 15 years of age. TEX. PEN. CODE ANN. § 49.045. Because this statute clearly dispenses with a culpable mental state, the court held that the felony murder charge also did not require a culpable mental state and upheld the trial court's decision not to quash the indictments.

Next, the court of appeals considered Appellant's argument that the evidence was legally and factually insufficient to support the murder convictions. Appellant alleged that the evidence was insufficient to show that he acted recklessly or that the act of hitting the other vehicle

died as a result of the accident. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(A). In this case, Appellant voluntarily provided the blood sample prior to his arrest.

**5.** The court of appeals did not have the benefit of our decision in *Ex parte Cavazos*, 203 S.W.3d 333 (Tex.Crim.App.2006), at the time of their opinion, so they correctly applied the test set forth in *Landers*.

head-on was "in furtherance" of the underlying felony. The court of appeals stated that, under our holding in *Johnson v. State*, 4 S.W.3d 254, 258 (Tex.Crim.App. 1999), "the primary concern of the 'course and furtherance' requirement" was the merger of the offenses, which did not occur in this case. The court concluded that a fact-finder could rationally have found beyond a reasonable doubt that Appellant committed an act clearly dangerous to human life in furtherance of felony DWI by driving a heavily loaded SUV over the center line and into oncoming traffic.

Finally, Appellant alleged that the trial court abused its discretion in admitting the testimony of Dr. Charles Mott because the testimony was unreliable and did not meet the standards set out in *Mata v. State*, 46 S.W.3d 902, 908–909 (Tex.Crim.App.2001). The court of appeals held that Dr. Mott explained retrograde extrapolation in a clear and understandable manner, explained his testing methods in a straightforward way, clarified which factors he did know about Appellant, and articulated the reasons for his assumption that Appellant was in the elimination phase of alcohol consumption. For all of these reasons, the court concluded that it was not an abuse of discretion to admit Dr. Mott's testimony.

Appellant's felony murder convictions were affirmed, and the other four convictions were vacated. Both Appellant and the State filed a petition for discretionary review, each requesting three grounds for review. We granted both petitions to consider the following six grounds for review:

Appellant's Grounds:

1. Whether a felony murder conviction can be based upon an underlying felony that expressly requires no culpable mental state.

2. Whether the "act clearly dangerous to human life" has to be "in furtherance" of the underlying felony in order to be convicted of felony murder.

3. Whether *Mata* precludes the results of a retrograde extrapolation when a testifying chemist assumes a defendant is in the elimination phase of alcohol consumption at the time of the accident.

State's Grounds:

1. Whether the court of appeals erred by reversing Appellant's convictions for double-jeopardy reasons without providing the parties an opportunity to brief the issue.

2. Whether it is apparent from the face of the record, in this case, that Appellant's convictions for both felony murder and either manslaughter or intoxication manslaughter constitutes a violation of the multiple punishments branch of double-jeopardy protection.

3. Whether a State's preference should be taken into account when deciding which convictions to vacate due to a violation of due process.

## DISCUSSION

### Lack of a Culpable Mental State for a Felony Murder Conviction

■ In his first ground for review, Appellant argues that the State failed to allege a culpable mental state for felony murder, and the court of appeals erred in its decision that the trial court did not err in refusing to quash the indictments. He contends that it goes against the intent of the Legislature to say that a felony that expressly has no culpable mental state may serve as the underlying felony in a felony murder conviction. This Court has already addressed this issue in a recent case, *Lomax v. State*, 233 S.W.3d 302 (Tex. Crim.App.2007). In *Lomax*, we held that the felony murder statute plainly dispensed with a culpable mental state, and that a felony DWI, which also does not require proof of a culpable mental state, may serve as the underlying felony. *Id.*

Appellant has not presented a new argument that would warrant our reconsideration of this issue.

### Definition of "in furtherance" as Applied to "clearly dangerous act"

■ In his second ground for review, Appellant argues that the court of appeals failed to consider the plain language of the felony murder statute when determining if there was sufficient evidence to show that the act clearly dangerous to human life was actually in furtherance of felony DWI. Appellant points out that the Texas Penal Code does not define the phrase "in furtherance," and under *Pettijohn v. State*, 782 S.W.2d 866, 868 (Tex.Crim.App.1989), when a statutory term is not defined by the statute itself, it should be construed according to the rules of grammar and common usage. Therefore, in the jury instructions, the phrase "in furtherance" should be given the meaning "to promote" or "to advance."

Appellant relies upon *Robinson v. State*, 783 S.W.2d 648, 651 (Tex.App.-Dallas 1990, pet. granted), to argue that it is acceptable to employ the use of a dictionary and apply the ordinary meaning of the words when construing a phrase. Appellant looked to Black's Law Dictionary, in which the definition of "furtherance" is "the act of furthering, helping forward, promotion, advancement, or progress." *Black's Law Dictionary* 466 (Abridged 6th Ed.1991). Appellant states that if you apply this definition to the felony murder statute, it means that the "clearly dangerous act" must advance or promote the commission of the underlying felony, and that, in this case, the act of driving into oncoming traffic did nothing to advance the commission of felony DWI and even halted its commission. Appellant claims that the court of appeals is acting arbitrarily by applying the plain language of the felony murder statute when it rejected his *mens rea* argument, but not applying the plain meaning of "in furtherance." Appellant also suggests that the court of appeals erred in its application of *Johnson v. State* because *Johnson* considered whether the underlying felony merged with felony murder, which is distinguishable from Appellant's argument.

■ When examining the legal sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the verdict. If a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the evidence is legally sufficient. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App.2005), citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim. App.1991). Appellant's indictment for felony murder alleged that the "clearly dangerous act" was "driv[ing] a heavily loaded Jeep towing a loaded trailer across the center stripe of a roadway into the oncoming lane of travel." According to witness testimony, Appellant was seen driving into the oncoming lane of travel several times before this action resulted in a collision. While we acknowledge that Appellant did not raise the issue of merger that was considered in *Johnson*, we disagree with his argument that driving into the other lane was not in furtherance of driving while intoxicated. A fact-finder could rationally have found beyond a reasonable doubt that Appellant committed an act clearly dangerous to human life in furtherance of felony DWI. The court of appeals did not err in determining that evidence was legally sufficient to support Appellant's felony murder conviction.

### Admission of Dr. Mott's Testimony and the Mata Factors

■ In his third ground for review, Appellant contends that the court erred in

holding that it was not an abuse of discretion to admit the testimony of Dr. Charles Mott. At trial, Dr. Mott testified that, when he performed his retrograde extrapolation, he assumed that the blood samples were taken when Appellant was in the elimination phase of alcohol consumption. He also testified that he based this assumption upon an entry in a hospital record stating that Appellant had said he last "ate or drank" at 7 p.m. and the accident took place at approximately 8:30 p.m. Appellant argues that the assumption that he was in the elimination phase of alcohol consumption was flawed and that, because of this assumption, Dr. Mott failed to consider any of the factors set out in *Mata v. State*, 46 S.W.3d 902, 916 (Tex.Crim.App. 2001). To support the argument that Dr. Mott's testimony was unreliable, Appellant argues that the result of his first blood test is not reliable because Dr. Mott had to convert the results of the hospital's serum-blood analysis, and because the blood sample was not taken until an hour and a half after the accident. Dr. Mott tested a sample of blood serum to determine the blood-alcohol concentration under a whole-blood analysis. In performing the retrograde extrapolation, Dr. Mott converted the serum blood test result into a whole-blood calculation in order to compare the two blood results. In order to do this, Dr. Mott used an average conversion ratio. Appellant argues that this ratio is unreliable without knowing the individual characteristics of Appellant.

■ We review the judge's decision to admit this scientific evidence for an abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex.Crim.App.2005). Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. *Hinojosa v. State*, 4 S.W.3d 240, 250–251 (Tex. Crim.App.1999), *citing Griffith v. State*, 983 S.W.2d 282, 287 (Tex.Crim.App.1998).

■ The proponent of scientific evidence must show the court, by clear and convincing evidence, that the evidence is reliable. To show reliability, three criteria must be met: (1) the underlying theory is valid; (2) the technique applying said theory is valid; and (3) the technique was properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992). Appellant claims that the technique was not properly applied by Dr. Mott because he incorrectly assumed that Appellant was in the elimination phase of alcohol absorption. The State correctly asserts that the trial court does not abuse its discretion by allowing an expert to base testimony upon an assumption if there is a factual basis for the assumption in the record. Dr. Mott based his assumption upon medical records stating that Appellant said he last ate or drank approximately 90 minutes prior to the accident. Although Appellant tried to undermine the reliability of this timeline, the trial judge did not abuse his discretion by allowing testimony based upon this assumption. The trial judge was in the best position to judge the credibility of the witnesses, and his decision to trust the medical record and allow the testimony was not unreasonable.

As we explained in *Mata*, retrograde extrapolation is the estimation of someone's blood-alcohol level at the time of driving by using a test result from a later time. 46 S.W.3d at 908. We also described the science behind retrograde extrapolation and recognized that, though there is some disagreement in the scientific community, retrograde extrapolation can be reliable when applied correctly. In *Mata*, we stated that "the expert's ability to apply the science and explain it with clarity to the court is a paramount consideration" and we also provided a list of factors a court should consider when de-

termining the reliability of a retrograde extrapolation. *Id.* at 916.

Based on the assumption that Appellant was in the elimination phase, Dr. Mott concluded that Appellant's blood-alcohol level was actually higher at the time of the accident than it was at the time of the blood test. The assumption that Appellant was in the elimination phase is bolstered by the fact that Appellant's blood-alcohol level was lower in the second blood test than it was in the first blood test. However, Appellant asserts that the results of the first blood test can not be relied on because Dr. Mott's conversion of the results to whole-blood analysis was erroneous, and the first sample was taken too long after the accident. Dr. Mott testified that serum sample results are approximately eighteen percent higher than whole-blood results. It is a valid method to reduce serum-blood results by 15–18% when converting to a whole-blood result,[6] but this percentage can be affected by an individual characteristics. Appellant also conducted a voir dire about this exact issue. The trial judge also heard Appellant's cross-examination of Dr. Mott and his efforts to undermine the expert's testimony. Dr. Mott did not use a conversion percentage that was outside of the acceptable range, and he explained why he felt that the conversion was accurate. As to the argument that the blood sample was taken too long after the accident to be reliable, research indicates that a blood test can be reliable if taken within two hours of driving.[7] Therefore, the results of the first blood test do, in fact, support the expert's assumption.

Dr. Mott testified that his assumption that Appellant was in the elimination phase disposed of his need to know many of Appellant's personal characteristics. As we recognized in *Mata*, "if the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors." 46 S.W.2d at 916.

In some cases, cross-examination could reveal the unreliability of an assumption similar to the one in this case or the unreliability of the retrograde extrapolation based upon such an assumption. However, based on the factors outlined in *Mata*, considering that Dr. Mott clearly explained retrograde extrapolation to the court, clearly explained how he calculated Appellant's blood alcohol level based upon his assumption, clearly explained how he converted the serum-blood result to a whole-blood result, consistently testified without contradicting himself, testified as to his years of experience with retrograde extrapolation, as well as the underlying theory of the science and its methodologies, it was not an abuse of discretion to admit his scientific testimony.

## Double-jeopardy

### A. Unassigned Error

■ The State argues that the court of appeals erred when it decided that Appellant's convictions violated the double-jeopardy clause without allowing the parties to brief the issue. The State bases its argument on *Pena v. State*, 191 S.W.3d 133, 136 (Tex.Crim.App.2006), which said, "[M]any, if not most, of the types of error that would prompt *sua sponte* appellate attention need not be assigned because the

6. Winek, C.L. and Carfagna, M. *Comparison of Plasma, Serum and Whole Blood Ethanol Concentrations.* J. Analytical Toxicology 11, 267–268, 1987.

7. Gullberg and McElroy, *Comparing Roadside with Subsequent Breath Alcohol Analysis and Their Relevance to the Issue of Retrograde Extrapolation,* 47 Forensic Sci. Int'l 193 (1992).

error involved constitutes an obvious violation of established rules. Novel constitutional issues are a different matter." The State concedes that convictions for intoxication manslaughter and manslaughter violate the double-jeopardy clause, and this is an "obvious violation of established rules." However, the State claims that it is a novel issue to determine if there are double-jeopardy violations when a defendant is convicted of felony murder and either intoxication manslaughter or manslaughter and that the court of appeals should have allowed the parties to brief this issue. The State also contends that the double-jeopardy issue has been waived because there was no objection at trial and the face of the record has failed to show a multiple punishments violation. *See Gonzalez v. State,* 8 S.W.3d 640 (Tex.Crim.App.2000). The State further argues that manslaughter and intoxication manslaughter are not the same offense as felony murder for double-jeopardy purposes under a *Blockburger*[8] analysis. Citing *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), which eliminated the "same conduct" test, the State rejects the idea that, just because Appellant engaged in only one "culpable act," he cannot be convicted of more than one offense. The State does not argue that there was no double-jeopardy violation, but rather that the double-jeopardy violation was not obvious from the face of the record as is required when an unassigned issue is addressed *sua sponte*—and without briefing—or when there is no objection made at trial.

▆▆▆▆ Appellate courts have the jurisdiction and authority to review unassigned error. *See Sanchez v. State,* 209 S.W.3d 117, 120 (Tex.Crim.App.2006); *Wright v. State,* 981 S.W.2d 197, 199 n. 2 (Tex.Crim.App.1998). In the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record. *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex.Crim.App.2000).

In *Ervin v. State,* we stated that imposing convictions for both manslaughter and intoxication manslaughter violated the double-jeopardy clause. 991 S.W.2d 804 (Tex. Crim.App.1999). This violation is clear from the face of the record and the court of appeals did not need to request briefing from the parties in order to decide this issue. The State contends, though, that the court of appeals should have requested briefing before deciding that the convictions for felony murder and manslaughter, and felony murder and intoxication manslaughter violated double-jeopardy principles. While we have never determined that double-jeopardy is always violated when one is convicted of these specific offenses, double-jeopardy arguments are especially common in the context of multiple homicide convictions. *See id.* (discussing the nationwide multitude of opinions addressing double-jeopardy issues with more than one homicide conviction per victim.) Therefore, the court of appeals did not err in considering this unassigned issue without further briefing from the parties.

**B. Felony murder, Intoxication Manslaughter, and Manslaughter**

▆▆▆▆ The Fifth Amendment offers three different constitutional protections. First, protection against a second prosecution for the same offense after acquittal. Second, protection against a second prosecution for the same offense after conviction. Third, protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds* by *Alabama v.*

8. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)

*Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *Ex parte Cavazos,* 203 S.W.3d 333, 336 (Tex.Crim.App.2006).

This case involves the third category of protection provided by the Fifth Amendment. In *Langs v. State,* 183 S.W.3d 680 (Tex.Crim.App.2006), we laid out the two contexts in which a multiple punishments claim can arise:

> 1. The lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X); and
>
> 2. Punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and manslaughter).

*Id.* at 685.

■■■ Our first task is to determine if intoxication manslaughter and felony murder constitute the "same offense." When multiple punishments arise out of one trial, the *Blockburger* test is the starting point in analyzing the two offenses. Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not. It is obvious from the outset that, when comparing the two Texas Penal Code statutes, the offenses are not the same. But in Texas, when resolving whether two crimes are the same for double-jeopardy purposes, we focus on the elements alleged in the charging instrument. *See Parrish v. State,* 869 S.W.2d 352, 354 (Tex.Crim.App. 1994.) Under the cognate-pleadings approach adopted by this Court, double-jeopardy challenges should be made even to offenses that have differing elements under *Blockburger,* if the same "facts required" are alleged in the indictment. *See*

*Hall v. State,* 225 S.W.3d 524 (Tex.Crim. App.2007).

In the first count of both indictments, the State charged Appellant with felony murder. The indictments alleged the following elements: (1) Appellant committed a felony other than manslaughter, (2) in the course of and in furtherance of committing the felony, he committed an act clearly dangerous to human life, (3) that caused the death of another. The indictment specified that the underlying felony was driving while intoxicated with a child passenger, and the act clearly dangerous to human life was driving a heavily loaded Jeep over the center line and into oncoming traffic, both of which had to be established by the State. To prove the felony DWI, the State had to show that Appellant was intoxicated while operating a motor vehicle in a public place and that there was a passenger younger than 15 years of age in the car at the time.

■■■ The second count of the indictment was intoxication-manslaughter and it contained the following elements: (1) Appellant was intoxicated, (2) while operating a vehicle in a public place, and (3) because of this intoxication caused the death of another. It is clear that when comparing the two charges as indicted, and taking into account all of the elements that the State must prove for these two charges, the two offenses are substantially similar. The only fact not common between the two is that the State would have to prove the defendant's intoxication, not just the operation of a vehicle, caused the fatal result in the intoxication manslaughter charge. The two offenses are not the same under a strict application of the *Blockburger* test, but the *Blockburger* test is a rule of statutory construction and is not the exclusive test for determining if two offenses are the same.

■ In *Ervin v. State,* we laid out a non-exclusive list of factors to consider when examining if two offenses are the same in the context of multiple punishment. These factors included: whether offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger;* and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes. 991 S.W.2d at 814. These factors are not exclusive, and the question ultimately is whether the legislature intended to allow the same conduct to be punished under both of the offenses. *Ervin v. State,* 991 S.W.2d 804 (Tex.Crim. App.1999), *relying on Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Felony murder and intoxication manslaughter are no longer in the same statutory section, but they were until 1994. Prior to 1994, intoxication manslaughter was called involuntary manslaughter by driving while intoxicated.[9] The offense was contained in the same section as all of the homicide offenses and was considered an alternative way to commit manslaughter. In 1994, involuntary manslaughter by driving while intoxicated was moved to the chapter that addresses intoxication offenses. The committee testimony and the house and senate journals addressing the

senate bill that made this change do not mention the reasoning for moving the statute, but we have suggested that it was largely for housekeeping purposes. *Ervin,* 991 S.W.2d. at 816. Despite the fact that intoxication manslaughter was moved to the chapter regarding intoxication offenses, it is still an offense that addresses homicide. As we held in *Ervin,* we cannot say that, by moving the statute, the legislature intended to create a completely separate offense for double-jeopardy purposes. *Id.* Because the two offenses are distinct and in separate statutory sections, they cannot be phrased in the alternative, therefore this factor is not applicable in this case.

Although intoxication manslaughter was moved to a different section of the Penal Code, it kept the title of manslaughter, indicating that it is still considered a homicide. Felony murder and intoxication manslaughter are clearly similarly named. Murder and manslaughter denote similar offenses that differ only in degree. As such, this factor weighs in favor of the two offenses being considered the "same" in these circumstances.

■ The focus of the two offenses is the same: the death of an individual. Both offenses are result oriented and punish one for causing the death of another, even if engaging in the behavior that ultimately ended in death but was not intended to cause the death. As we said in *Ervin,* the sameness of the result is an indication that the Legislature did not intend to impose multiple punishments. *Id.* In conjunction with this factor is the "allowable unit of prosecution," which is defined by the legislature and determines if one course of conduct results in more than one offense. *Ex parte Cavazos,* 203 S.W.3d 333. Usually, analysis of an allow-

---

9. Former Tex. Pen.Code Ann. § 19.05(a)(2) (Vernon 1993).

able unit of prosecution involves a situation in which two offenses from the same statutory section are charged, but the spirit behind the principle is fitting here. In Texas, the allowable unit of prosecution for an assaultive offense is one unit per victim, which is evidence that the legislature did not intend for one to be prosecuted for several homicides when there is only one victim. *See id.* (holding that there can be only one burglary conviction for each unlawful entry, not one conviction per complainant.) In this case, there were two victims, so each victim would constitute a separate offense.

The most important factor is if there is an indication in the legislative history that the offenses should be treated the same for double-jeopardy purposes. To be clear, felony murder and intoxication manslaughter are certainly not the same offense in all situations. What distinguishes this case is the way in which the State chose to indict Appellant and the underlying felony in the felony murder charge. There is no legislative indication that felony murder was meant to be treated the same as an intoxication-manslaughter offense, but when the underlying felony is a felony DWI with a child passenger, it is hard to fathom that the legislature intended for one drunk-driving accident to result *in multiple homicide convictions for each victim.*

In *Ervin,* we determined that manslaughter and intoxication manslaughter are the same offense. Similarly, under the facts of this case, felony murder is the same as intoxication manslaughter, and intoxication manslaughter is the same as manslaughter. Because the multiple convictions for the same conduct violate double-jeopardy, only one of these convictions can be upheld.

**Remedy for Double Jeopardy Violation**

 The State's final ground for review hinges upon our determination regarding the court of appeals' decision to consider the double-jeopardy issue as unassigned error. The State argues that courts should take into account the prosecution's preference when deciding which convictions to vacate when a multiple punishment violation occurs. The State agrees that the court of appeals was correct in applying the "most serious offense" test, and agrees that felony murder is the most serious offense. However, the State believes that, while cases such as *Landers* and *Ex parte Cavazos,* 203 S.W.3d 333 (Tex.Crim.App.2006), attempted to lay out the factors to consider when deciding which conviction to vacate, they failed to include an important factor: the discretion of the prosecutor. The State asserts that prosecutors should be given a say as to which convictions to vacate since they have discretion over which charges to bring against the defendant. In this case, the State argues that a reasonable prosecutor might not have chosen to prosecute Appellant for the most serious offense if he had known that the two other charges would be dismissed. The State maintains that a reasonable prosecutor might have looked to the future consequences Appellant would face if he were to be convicted of another DWI offense. If the felony murder convictions are retained, then Appellant could be charged with a misdemeanor DWI enhanced by a prior felony conviction. The punishment range for this is a fine no greater than $4000, and a jail sentence from 90 days to one year. Tex. Pen.Code Ann. § 12.43(a). But if the intoxication-manslaughter convictions are retained, Appellant could be charged with felony DWI, a third-degree felony.

 When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. *Ex parte Cavazos,* 203

S.W.3d 333; *Landers v. State,* 957 S.W.2d 558. We apply the "most serious offense" test to double-jeopardy violations because of the policy reasons stated in *Landers* including that this test would eliminate arbitrary decisions based upon the order of offenses in the charging instrument, that in most circumstances the State would elect to retain the most serious conviction, and that public safety is insured through the deterrent influence of penalties. *Id.* at 560, *citing Ex parte Pena,* 820 S.W.2d 806 (Tex.Crim.App.1991).

We determined in *Ex parte Cavazos* that the most serious offense was the offense in which the greatest sentence was assessed. 203 S.W.3d at 338 (overruling *Landers* to the extent that it held that factors such as degree of felony, range of punishment, and parole eligibility rules should be considered when determining the most serious offense.) In the present situation, the trial judge assessed 18 years' confinement, to be served concurrently, for all six convictions. Therefore, we cannot look to only the sentence imposed to determine which of these offenses is the most serious. The State urges that a contingent order be issued to allow the prosecutor to determine which conviction to retain. Although we recognize that not every prosecutor would elect to keep the most serious offense in every case, the "most serious offense" test attempts to take into account which conviction prosecutors would choose to retain, while also continuing to meet the other policy considerations.

Only because the sentences are identical do we have to look to another criteria for determining which offense is the most serious. In this case, we look to the degree of felony for each offense. While the sentences assessed for each of the convictions on this case is the same, felony murder is a first-degree felony, while intoxication manslaughter and manslaughter are second-degree felonies. As such, felony murder is clearly the most serious offense and we affirm the court of appeals' decision to retain this conviction.

## CONCLUSION

Although the court of appeals did not have the benefit of our decision in *Lomax v. State,* 233 S.W.3d 302, the court correctly determined that felony DWI can serve as the underlying felony of a felony murder prosecution. We agree with the court of appeals that the evidence was legally sufficient to show that Appellant's clearly dangerous act was in furtherance of the underlying felony and that the trial court did not abuse its discretion in admitting the expert testimony of Dr. Mott. Finally, the court of appeals did not err in considering the unassigned error, and correctly determined that the felony murder convictions be retained. We affirm the decisions of the court of appeals.

KELLER, P.J., filed a dissenting opinion.

KELLER, P.J., dissenting.

When the sentences are different, "the most serious punishment" (or "offense") seems obvious: the greater term of years (or fine, as the case may be). That was the scenario confronted by this Court in *Landers v. State,* where the term of confinement was sixty-two years for one offense and nine months for the other.[1] But what should a court do when the sentences are identical and each offense could be characterized as the "most serious" depending on what factors are examined? Such a case is now before us.

Felony murder is a first-degree felony while intoxication manslaughter is a second-degree felony. That difference makes felony murder seem worse, but at present,

---

1. 957 S.W.2d 558 (Tex.Crim.App.1997).

that difference creates no practical consequence for the convicted person. A felony-murder conviction may have a practical consequence on the convicted person's early release prospects because the offense is included under provisions that adversely affect an inmate's eligibility for parole and mandatory supervision.[2] However, those same consequences would attach to intoxication manslaughter if a deadly weapon finding is made.[3] Moreover, a conviction for intoxication manslaughter can be used for enhancement under Chapter 49 of the Penal Code while a conviction for felony murder could not,[4] but convictions for both types of offenses can be used for enhancement purposes under Chapter 12.[5]

This Court has struggled with how to determine whether a particular offense is the "most serious" for the purpose of determining which offenses to discard and which to retain. In *Ex parte Cavazos*, this Court recognized that "[d]etermining which offense is 'most serious' may be difficult and may not always be objective."[6] In both *Landers* and *Cavazos*, we explained that we should look first to the greatest sentence,[7] but we seemed to have expressed some confusion about what to do if the sentences are the same. In *Landers*, we suggested that "rules of parole eligibility and good time" could serve "as a tie-breaker,"[8] while *Cavazos* overruled *Landers* to the extent it held that "other

factors, such as the degree of the felony, range of punishment, and rules governing parole eligibility and awarding of good-conduct time, shall be used in that determination."[9] Nevertheless, in this case, the Court uses "degree of felony" as a "tie-breaker" even though it disavowed such use in *Cavazos*.

This issue has not been raised before. Although I authored *Landers*, the practical impossibility of determining in some cases which offense is really the most serious has convinced me that it would be preferable to simply give the local prosecutor the option to choose which conviction to retain. Making the matter a function of prosecutorial discretion seems to be most consistent with our prior recognition that a prosecutor in this type of situation is entitled to "submit both offenses to the jury for consideration" and receive "the benefit of the most serious punishment obtained."[10] If a subjective decision is to be made, let the local prosecutor who exercised the decision to bring the case make it. Indeed, doing so would be consistent with at least one of our decisions—*Ex parte Ervin*, the very case relied upon to find a double-jeopardy violation here.[11]

Although I agree with the Court's double-jeopardy finding, I disagree with its decision to choose which convictions to retain. Instead, I would remand this case to

**2.** *See* Tex.Code Crim. Proc. art. 42.12, § 3g(a)(1)(A); Tex. Gov't Code §§ 508.145(d), 508.149(a)(2).

**3.** Art. 42.12, § 3g(a)(2); §§ 508.145(d), 508.149(a)(1).

**4.** *See* Tex. Pen.Code § 49.09.

**5.** *See id.*, § 12.42.

**6.** 203 S.W.3d 333, 338 (Tex.Crim.App.2006).

**7.** *Cavazos,* 203 S.W.3d at 338 ("greatest sentenced ... assessed"); *Landers,* 957 S.W.2d at 560 ("the longest sentence imposed").

**8.** *Landers,* 957 S.W.2d at 560.

**9.** *Cavazos,* 203 S.W.3d at 338.

**10.** *Landers,* 957 S.W.2d at 560–61.

**11.** 991 S.W.2d 804, 817 (Tex.Crim.App.1999)(agreeing with State's suggestion to vacate manslaughter conviction and retain conviction for intoxication manslaughter).

the trial court for the local prosecutor's office to decide which convictions should be retained. Accordingly, I respectfully dissent.