# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00668-CR

**Daniel Talamantes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. D-1-DC-06-301028, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Daniel Talamantes of two counts of murder and assessed punishment for each count at fifty years in prison. *See* Tex. Penal Code Ann. § 19.02 (West 2003). In this appeal, appellant contends that the felony-murder doctrine should not have been applied here and that the trial court should have granted his motion for new trial on the basis of newly discovered evidence. Finding these contentions to be without merit, we affirm the convictions.

Just after midnight on April 29, 2006, appellant drove his pickup truck through a red light and collided with an automobile driven by Monica Sanchez. Appellant was intoxicated, and there is evidence that he was driving as fast as 85 miles per hour as he entered the intersection. Sanchez's five-year-old son and sixteen-year-old niece were with her in the car and died as a result of injuries they sustained in the collision.

Appellant was accused of murdering Elias Sanchez and Erica Vasquez in two counts alleging that appellant, while in the course of committing the offense of felony driving while intoxicated, intentionally or knowingly committed an act clearly dangerous to human life by operating a motor vehicle at an unreasonable speed, failing to stop at a red light, and striking the motor vehicle occupied by the deceased. *See id.* § 19.02(b)(3).[1] Appellant unsuccessfully moved to quash these counts, arguing that a felony-murder prosecution cannot be based on the underlying offense of driving while intoxicated because that offense does not have a culpable mental state. He repeats that argument here, although he acknowledges that it was resolved against him in *Lomax v. State*, 233 S.W.3d 302, 304-05 (Tex. Crim. App. 2007). *See also Bignon v. State*, 252 S.W.3d 360, 365-66 (Tex. Crim. App. 2008) (reaffirming *Lomax*). Bound as we are by the holding in *Lomax*, we overrule appellant's challenge to the use of driving while intoxicated as the predicate offense in a felony-murder prosecution.

Appellant filed a motion for new trial asserting that material evidence favorable to him had been discovered since trial. *See* Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006). The motion was overruled by the trial court following a hearing. In his remaining contention, appellant contends that the court's ruling was an abuse of its discretion.

To be entitled to a new trial based on newly discovered evidence, a defendant must show that: (1) the alleged new evidence was unknown and unavailable to him at the time of trial; (2) his failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and

---

[1] The indictment contained three other counts that were not submitted to the jury.

(4) the new evidence is probably true and will probably bring about a different result on another trial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002); *Marinos v. State*, 186 S.W.3d 167, 178 (Tex. App.—Austin 2006, no pet.). The trial court determines the credibility of the witnesses and whether the new evidence is probably true. *Keeter*, 74 S.W.3d at 37. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Marinos*, 186 S.W.3d at 178.

It was undisputed at trial that at least five persons were in appellant's pickup truck at the time of the collision: appellant, who was driving; Ivan Suarez, who was sitting in the right front passenger seat; and Sara Barron, Toni Hutchinson, and Heather Lopez, who were sitting in the rear seat. The alleged newly discovered evidence concerns the existence of a sixth person who the defense claimed was responsible for the collision. Hutchinson and Lopez testified for the defense that this person, a man whose name they did not know, was sitting in the middle of the front seat, between appellant and Suarez. According to these witnesses, the man was of Mexican origin and spoke no English. Hutchinson and Lopez testified that just before the collision, this man began to argue with appellant in Spanish and may have pushed the accelerator with his foot. Hutchinson testified, "I seen his body, like he was pushing the gas because like his body leaned like this." She added, "We started going fast. And I didn't know that we were going to wreck or anything, and that guy, he jumped back at me because he was pushing on the gas." Lopez testified, "Well, they were arguing. And then the guy—I heard [appellant] saying to move his foot, for that guy to move his foot. And we were going fast—we had started going fast." Hutchinson and Lopez were impeached

3

with evidence that they did not mention the alleged sixth person when questioned by investigators. The other known occupants of the pickup truck did not testify at the trial.

In his motion for new trial, appellant stated that three witnesses had come forward who could confirm the testimony regarding the presence of the sixth person and his actions. These witnesses were Ivan Suarez, Sergio Mejia, and Reyna Olivera, each of whom testified at the new trial hearing.

Mejia and Olivera gave similar testimony. They said that at about 10:30 p.m. on the night of the incident, appellant, who was their friend, came to their apartment and invited them to go with him to a club. Appellant was driving his pickup truck and accompanied by Suarez, who was also their friend, and three young women whom they did not know. They declined appellant's invitation, but they said that another resident at the apartment complex, whom they knew only as Cesar, agreed to join appellant and the others. Cesar returned to the apartment complex later that night, between 1:00 and 2:00 a.m. Mejia and Olivera testified that Cesar's shirt was torn and he appeared to have been running. He told them that there had been an accident. Olivera testified she attended two days of appellant's trial, but that she did not speak to appellant's counsel until after the trial. Mejia testified that he attended three days of the trial. He said that he spoke to appellant's counsel on the last day of the trial and shared his information with him.

As previously noted, Suarez was identified at trial as having been a passenger in appellant's truck when the collision occurred. Suarez explained his failure to testify at appellant's trial by saying that he had been living in Minnesota at the time. Suarez confirmed Mejia's and Olivera's testimony concerning how Cesar came to be a passenger in appellant's pickup. Suarez

4

further testified that just before the collision, Cesar noticed that a police patrol car was behind appellant's truck and "freaked out." According to Suarez, "Cesar said, press the gas, press the gas. And that's when they started fighting, like wrestling, in the truck and the truck was moving. I don't know what happened." Suarez said that appellant was "pushing him [Cesar] with one hand and he's trying to control the steering wheel with the other." He estimated that the truck was going at least 70 miles per hour as it entered the intersection. Suarez acknowledged giving a statement to the police on the night of the collision in which he said only five persons were in the truck. Suarez explained that he had been intoxicated at the time and had lied to the police.

The trial court overruled the motion for new trial after stating that Suarez "is clearly lying. I don't believe anything that he said." The court also expressed doubts about the credibility of Mejia and Olivera, and found that Mejia's testimony "doesn't add anything to the trial. He says that he saw him and that he said there was an accident. Well, we know there was an accident." The court also found that because Mejia attended the trial, "it's clear that the Defense could have found out about his testimony."

Given Suarez's inconsistent statements, the trial court was well within its discretion to find that his testimony at the hearing was untrue. Moreover, the court could reasonably conclude that the testimony of all three witnesses was merely corroborative of the testimony introduced at trial, and that this new testimony was unlikely to bring about a different result. Mejia and Olivera confirmed the existence of the sixth person, Cesar, but they did not confirm the testimony by Hutchinson and Lopez regarding that person's actions leading up to the collision. On its face, Suarez's testimony showed that there was a struggle between appellant and Cesar, but Suarez did

5

not testify that he saw Cesar press the accelerator. Finally, Suarez was known to be in the truck, and Mejia and Olivera testified that they attended the trial and even, in Mejia's case, spoke to defense counsel. The trial court could reasonably conclude that the defense could have obtained the testimony of all three witnesses at trial through the exercise of reasonable diligence. The court did not abuse its discretion by overruling the motion for new trial.

There are separate judgments of conviction for each count. The judgments are affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: February 19, 2009

Do Not Publish