IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00160-CR

 

Melvin Ray Childress,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District
Court

McLennan County, Texas

Trial Court No. 2006-1118-C2

 



Opinion



 

Melvin Childress was charged by indictment
with two felony offenses:  (1) dating violence assault (enhanced); and (2)
aggravated assault.  Childress was alleged to have poured gasoline on Tamala,
his married girlfriend, and then threatened to light it with a lighter.  A jury
found him guilty on both charges and assessed prison sentences of ten and
forty-five years, respectively, and a $10,000 fine on each.  Asserting three
issues, Childress appeals.  We will affirm.

 

Factual Sufficiency

We begin with Childress’s third issue,
which alleges that the evidence is factually insufficient.  In a factual
sufficiency review, we ask whether a neutral review of all the evidence, though
legally sufficient, demonstrates either that the proof of guilt is so weak or
that conflicting evidence is so strong as to render the factfinder’s verdict
clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d. 404,
414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7. 
The appellate court “does not indulge in inferences or confine its view to
evidence favoring one side of the case.  Rather, it looks at all the evidence
on both sides and then makes a predominantly intuitive judgment. . . .”  Id. (quoting William Powers and Jack Ratliff, Another Look at “No Evidence” and
“Insufficient Evidence,” 69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s determination. 
Watson, 204 S.W.3d at 416-17.

For the State to prove that Childress
committed dating violence assault, it was required to prove that Childress
intentionally, knowingly, or recklessly caused bodily injury to another person
(by pouring gasoline on her) with whom he had a dating relationship.  Tex. Pen. Code Ann. § 22.01(a)(1),
(b)(2) (Vernon Supp. 2008).  The offense was enhanced to a third-degree felony
by Childress’s stipulation to his prior conviction of an assault offense
against a family or household member.  Id. § 22.01(b)(2).  For the State
to prove that Childress committed aggravated assault, it was required to prove
that Childress intentionally or knowingly threatened another person with
imminent bodily harm and exhibited a deadly weapon (gasoline and lighter)
during the assault.  Id. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2008).

Tamala testified that she and Childress
met in August of 2005 and, despite Tamala’s being married, they formed a dating
and sexual relationship.  Childress gave her attention when her marriage was
struggling.  They enjoyed each other’s company, did things together, and took
out-of-town trips together.  They talked about their problems together, and she
stayed over at his house.

On May 5, 2006, Tamala and several friends
were at a restaurant having drinks.  While at the restaurant, Childress called
Tamala several times, and she lied to him, saying that she was still at work. 
On her way home, he called Tamala again, and she agreed to meet him at a
convenience store around 11:00 p.m.  When Tamala arrived, Childress was already
there, standing next to his car with the trunk open.  Tamala parked alongside
him but did not get out of her car.  Childress was angry and asked her where
she had been, and she said she had been at a restaurant with coworkers.  Tamala
began to leave, and Childress asked her to wait and asked her again where she
had been.  Childress then got a container out of his trunk, poured its contents
on Tamala through her open car window, and told her, “I’m going to set your
bitch ass on fire.”  The gasoline blurred and burned her eyes, but she could
see that Childress was holding a lighter.  She scrambled out of her car’s
passenger side and ran into the store, with Childress following her.

The store clerk said that Tamala was
covering her eyes and crying hysterically as she entered the store; she smelled
like gas.  Childress came in and told the clerk that Tamala had poured gas on
herself, but the clerk didn’t believe him; she had seen Childress outside with
a bottle of liquid before the incident.  A bystander was in the store, and he
testified that Tamale smelled of gas, was frightened, and said that Childress
had tried to light her on fire.  The responding officers also said that Tamala
smelled of gas and told them that Childress had poured gasoline on her.

After the incident, Tamala said that Childress
threatened to tell her husband about their affair if she did not sign an
affidavit of nonprosecution.  Tamala said she signed one because she wanted the
whole situation to “go away.”  She also continued her affair with Childress and
eventually told her husband about him.

Childress’s theory is that Tamala poured
the gasoline on herself and that she made up the allegation against Childress,
and that her lack of credibility causes the evidence to be factually
insufficient.

The
jury is the exclusive judge of the facts, the credibility of the witnesses, and
the weight to be given to the witnesses’ testimony.  Jaggers v. State,
125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (citing Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)).  The jury may
believe all, some, or none of any witness’s testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Jaggers, 125 S.W.3d at 670. 
As the reviewing court, we “should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.”  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); see also Sharp,
707 S.W.2d at 614; Jaggers, 125 S.W.3d at 670.

The degree of deference
a reviewing court provides must be proportionate with the facts it can
accurately glean from the trial record.  A factual sufficiency analysis can
consider only those few matters bearing on credibility that can be fully
determined from a cold appellate record.  Such an approach occasionally permits
some credibility assessment but usually requires deference to the jury’s
conclusion based on matters beyond the scope of the appellate court’s
legitimate concern.  See George
E. Dix & Robert O. Dawson, 42 Texas Practice—Criminal Practice and
Procedure § 36.69 (Supp. 1999).  Unless the available record clearly
reveals a different result is appropriate, an appellate court must defer to the
jury’s determination concerning what weight to give contradictory testimonial
evidence because resolution often turns on an evaluation of credibility and
demeanor, and those jurors were in attendance when the testimony was delivered.

 

Johnson
v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

By finding Childress guilty, the jury
obviously believed Tamala, and the record in this case warrants our deference
to the jury’s credibility determination.  Therefore, considering all of the
evidence in a neutral light, we find that the evidence is factually sufficient to
support the jury’s guilty findings.  The proof of guilt is not so weak nor the
conflicting evidence so strong as to render the jury’s verdicts clearly wrong
and manifestly unjust.  Because the evidence is factually sufficient, we
overrule Childress’s third issue.

Double Jeopardy

            We now turn to Childress’s first issue,
which complains of a double-jeopardy and collateral-estoppel violation arising
from multiple punishments for the same offense.  We first note that Childress
did not raise this complaint at trial, but he will be excused from the ordinary
rules of procedural default “when the undisputed facts show the double jeopardy
violation is clearly apparent on the face of the record and when enforcement of
usual rules of procedural default serves no legitimate state interests.”  Gonzalez
v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); accord Murray v. State, 24 S.W.3d 881, 888 (Tex. App.—Waco 2000, pet. ref’d).  Because we have
a complete record, “it can be determined from undisputed facts clearly apparent
on the face of the record” whether there has been a jeopardy violation.  See
 Murray, 24 S.W.3d at 889.

The Double Jeopardy Clause of the 5th
Amendment protects an accused from being punished more than once for the same
offense.  U.S. Const. Amend. V; Littrell
v. State, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008).  Two offenses may be
the same if one offense stands in relation to the other as a lesser-included
offense, or if the two offenses are defined under distinct statutory provisions
but the legislature has made it clear that only one punishment is intended.  Littrell,
271 S.W.3d at 275-76; Bigon v. State, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008).  When multiple punishments arise out of one trial, the Blockburger
test is the starting point in analyzing the two offenses.  Bigon, 252
S.W.3d at 370.  Under the Blockburger test, two offenses are not the
same if one requires proof of an element that the other does not.  Id.; see Blockberger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76
L.Ed. 306 (1932).  In Texas, when resolving whether two crimes are the same for
double-jeopardy purposes, we focus on the elements alleged in the charging
instrument.  Bigon, 252 S.W.3d at 370.

            In the first count of the
indictment, the State charged Childress with dating violence assault (enhanced). 
The indictment alleged the following elements for dating violence assault,
enhanced to a third-degree felony: (1) Childress, (2) intentionally, knowingly,
or recklessly, (3) caused bodily injury to Tamala, (4) a person with whom
Childress had a dating relationship, (5) by pouring gasoline on her, and (6)
Childress had a prior conviction for family violence assault.  See Tex. Pen. Code Ann. § 22.01(a)(1),
(b)(2).

In the second count, the State charged Childress
with aggravated assault, alleging the following elements:  (1) Childress, (2) intentionally
or knowingly, (3) threatened Tamala with imminent bodily injury by burning, (4)
and used or exhibited a deadly weapon—gasoline and a lighter—during the
commission of the assault.  See id. §§ 22.01(a)(2),  22.02(a)(2).

            Childress’s principal
argument is that the pouring of gasoline on the victim is the same act in both
counts, that the entirety of the acts in the first count is included within the
acts making up the second count, and that the same acts are elements of the
same criminal episode.  We are not persuaded.  First, we note that the Supreme
Court eliminated the “same conduct” rule—the idea that just because Childress engaged
in only one “culpable act,” he cannot be convicted of more than one offense.  See
 United States v. Dixon, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125
L.Ed.2d 556 (1993); Bigon, 252 S.W.3d at 369.  And under Texas law, an accused may be prosecuted in a single criminal action for all offenses
arising out of the same criminal episode.  Tex.
Pen. Code Ann. § 3.02(a) (Vernon 2003).

            At trial there may be a
substantial overlap in the proof of each offense, but under the Blockburger
test, we must examine the separately charged elements of each offense.  Ex
parte McWilliams, 634 S.W.2d 815, 824 (Tex. Crim. App. 1982).  When
comparing the two charges as indicted, and taking into account all of the
elements that the State must prove for these two charges, the offenses are not
the same under a strict application of the Blockberger test.  The State
concedes that an aggravated assault requires an underlying assault, but we
agree with it that, in this case, the basis for the underlying assault—the
threat of imminent bodily injury—is distinct from the basis for the dating
violence assault, which was actual bodily injury.[1] 
The dating violence assault is not a lesser-included offense of the aggravated
assault; it is not established by proof of the same or less than all the facts
required to establish the commission of the aggravated assault.[2] 
 Texas law has no bright-line rule that a threat of harm and actual harm
cannot arise from the same act and occur simultaneously and that the threat must
precede the initial harm.  See Schmidt v. State, 232 S.W.3d 66, 67-69 (Tex. Crim. App. 2007).

But while the offenses are not the same
for the purpose of the Blockberger test, our inquiry does not end.  See
Bigon, 252 S.W.3d at 370.  We also consider a non-exclusive list of
factors to consider when examining whether two offenses are the same in the
context of multiple punishments.  See Ervin v. State, 991 S.W.2d
804, 814 (Tex. Crim. App. 1999).  These factors include:  (1) whether the offenses
are in the same statutory section; (2) whether the offenses are phrased in the
alternative; (3) whether the offenses are named similarly; (4) whether the
offenses have common punishment ranges; (5) whether the offenses have a common
focus; (6) whether the common focus tends to indicate a single instance of
conduct; (7) whether the elements that differ between the two offenses can be
considered the same under an imputed theory of liability that would result in
the offenses being considered the same under Blockburger; and (8)
whether there is legislative history containing an articulation of an intent to
treat the offenses as the same or different for double-jeopardy purposes.  Id. 
These factors are not exclusive, and the question ultimately is whether the
legislature intended to allow the same conduct to be punished under both of the
offenses.  Bigon, 252 S.W.3d at 371.

            It is apparent to us that
the legislature intended these two offenses to be treated separately.  While
they are in the same chapter of the Penal Code, they are separate and distinct
statutes, and they are not phrased in the alternative.  They do not have common
punishment ranges.[3] 
While they have a related focus—assaults—in this case there is no common focus
between the two offenses.  The dating violence assault focus is on the bodily
injury of a victim in a dating relationship with the defendant, while the focus
of aggravated assault in this case is the assaultive conduct in the form of
threatening imminent bodily injury with a deadly weapon.  The threat of harm
was being set on fire, while the harm actually suffered was bodily injury to
Tamala’s eyes and face from the gasoline.

            The differing elements
between dating violence assault and aggravated assault, as charged, cannot be
considered the same under an imputed theory of liability.  Dating violence
assault, with its bodily injury element (which conceptually would be no
different had Childress hit Tamala in the face), is not similar to an imminent
threat of bodily injury with a deadly weapon.  Finally, neither Childress nor
the State has provided us with any legislative history that might indicate
whether or not the legislature intended to treat the offenses as the same or
different for double-jeopardy purposes.

            After reviewing the Ervin
factors, we determine that the offenses as charged are not the same in the
context of multiple punishments.  Accordingly, no double-jeopardy violation
occurred.[4] 
We overrule Childress’s first issue.

Facial Challenge to “Dating
Relationship” as Vague

            We next address Childress’s
claim in his second issue that the “dating relationship” statute that elevated
the assault to a third-degree felony is facially unconstitutional because of
its alleged vagueness and overbreadth.[5] 
A complaint that a statute is facially unconstitutional may be made for the
first time on appeal.  Woodson v. State, 181 S.W.3d 280, 282 (Tex.
App.—Waco 2006, pet. ref’d); Bryant v. State, 47 S.W.3d 80, 84 (Tex.
App.—Waco 2001, pet. ref’d).

            In
Bryant, we articulated how we review such a vagueness claim:

 

In its review of a challenged statute,
the court will begin with a presumption of constitutionality.  Thus, the burden
to establish unconstitutionality falls upon the challenger.  Ex parte
Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); Kaczmarek v.
State, 986 S.W.2d 287, 292 (Tex. App.—Waco, 1999[, no pet.]).

 

There are two basic requirements for a
constitutional vagueness challenge that does not involve a First Amendment
right.  First, the challenger must demonstrate that he has suffered some actual
or threatened injury under the statute.  In other words, the challenger must
have standing to contest the statute.  Texas Workers’ Compensation
Comm’n v. Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995).  Then, the challenger
must also show that the statute is impermissibly vague in “all of its
applications.”  Village of Hoffman Estates v. Flipside, Hoffman Estates,
Inc., 455 U.S. 489, 494-495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).  In Kaczmarek,
this court set the standard for evaluating vagueness in a criminal statute. 
The statute must provide an ordinary, “law-abiding” individual with sufficient
notice that his conduct is violative of criminal law.  Kaczmarek, 986
S.W.2d at 292.  The statute must also provide explicit standards to law
enforcement personnel to prevent arbitrary or discriminatory enforcement.  To
successfully show that the statute is unconstitutionally vague on its face, the
challenge must establish that “no set of circumstances exists under which the
statute will be valid.”  Santikos v. State, 836 S.W.2d 631, 633 (Tex. Crim.
App. 1992) (citing United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

 

Bryant, 47 S.W.3d at 84-85 (footnote omitted).

            We find that Childress has
standing; because of the “dating relationship” issue, his dating violence
assault was elevated to a third-degree felony.  See id. at 85.  We thus
turn to the vagueness complaint.  We appear to be the first Texas appellate
court to address such a complaint about the “dating relationship” statute,
which provides in pertinent part:

(b) For purposes of this title, “dating
relationship” means a relationship between individuals who have or have had a
continuing relationship of a romantic or intimate nature.  The existence of
such a relationship shall be determined based on consideration of:

(1) the length of the relationship;

            (2) the nature of the
relationship; and

(3) the frequency and type of
interaction between the persons involved in the relationship.

(c) A casual acquaintanceship or
ordinary fraternization in a business or social context does not constitute a
“dating relationship” under Subsection (b).

 

Tex. Fam. Code Ann. § 71.0021(b, c) (Vernon 2008).[6]

 

A statute is unconstitutionally vague if
it fails to “give the person of ordinary intelligence a reasonable opportunity
to know what is prohibited” or “provide explicit standards for those who apply
them.”  Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294,
2298-99, 33 L.Ed.2d 222 (1972); accord State v. Markovich, 77 S.W.3d
274, 279 (Tex. Crim. App. 2002); Coggin v. State, 123 S.W.3d 82, 87
(Tex. App.—Austin 2003, pet. ref’d).

 

Woodson, 181 S.W.3d at 282.

            Childress’s argument is
essentially that it “is possible that an ordinary person’s interpretation of
[dating relationship] could be quite inconsistent even given the guidance set
out in the Court’s Charge,” and that people, including law enforcement, might
disagree over whether two persons are in a dating relationship.

             The statute’s definition of
“dating relationship” is defined by commonly used terms; the definition is not
complicated.  It takes a common-sense approach to describing a dating
relationship and distinguishes a dating relationship from casual acquaintances and
ordinary fraternizations.

            The State correctly points
out that the statute does not lack notice; the conduct that the actor needs
notice of is the assault, not the status of the actor’s relationship to the
victim.  It is not a crime to be in a dating relationship, and Childress’s
conduct would have been criminal had he poured the gasoline on a stranger. 
Similarly, police would have known to arrest Childress for assault had Tamala
been a stranger to him.  The fact that their dating relationship, when combined
with Childress’s prior conviction, increased the offense level to a felony does
not create a constitutional notice problem.

            Section 71.0021 is not
constitutionally vague.  We overrule Childress’s second issue.

Conclusion

Having overruled Childress’s three
issues, we affirm the trial court’s judgment.

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed April 1, 2009

Publish

[CRPM]








 









[1] Family and dating violence assault can
only be predicated on bodily injury.  See Tex. Pen. Code Ann. § 22.01(b).

 





[2] We reject Childress’s argument that the
“allowable unit of prosecution” double-jeopardy concept applies to this case.  See
Ex parte Hawkins, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999).  That concept
applies where a single statute has been violated numerous times, either with
different victims or by individually listed acts within the same statute, and
it is particularly applicable when each alleged violation of the statute is
proved in part by the same evidence.  Id. at 556-57.  This concept is
inapplicable in this case because two separate offenses, under two different
statutes, were committed once.  See id.; cf. Ex parte Rathmell, 717
S.W.2d 33, 35 (Tex. Crim. App. 1986) (Blockburger applies to situations
in which criminal conduct violates two separate and distinct statutes).





[3] Family and dating violence assault,
when enhanced by a prior conviction of the same offense, is a third-degree
felony, and the punishment range is two to ten years.  Tex. Pen. Code Ann. § 22.01(b); Id. § 12.34(a) (Vernon
2003); id. § 12.42(a)(3) (Vernon Supp. 2008).  Aggravated assault is a
second-degree felony (enhanced here to a first-degree felony because of a prior
felony conviction), with a punishment range of two to twenty years.  Id. § 22.02(b); id. § 12.33(a) (Vernon 2003); id. § 12.42(b).





[4] Because Childress has not briefed his collateral
estoppel argument, he presents nothing for review and we will not address it.  Strange
v. Continental Cas. Co., 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet.
denied); see Tex. R. App. P.
38.1(h).

 





[5] Childress’s second issue mentions the
alleged overbreadth of the statute, but overbreadth is not briefed.  Nor is it
applicable, as Childress does not contend that the statute covers protected
First Amendment freedoms.  See Smith v. State, 959 S.W.2d 1, 24 (Tex.
App.—Waco 1997, pet. ref’d) (statute is impermissibly overbroad when, “in
addition to proscribing activities which may constitutionally be forbidden, it
sweeps within its coverage speech or conduct which is protected by the First
Amendment”) (quoting Bynum v. State, 767 S.W.2d 769, 772 (Tex. Crim.
App. 1989)).





[6] The court’s charge contained these
definitions.