# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00168-CR

**Douglas Morse, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 09-264-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Douglas Morse of two counts of aggravated assault of a public servant, one count of unauthorized use of a motor vehicle, and one count of evading arrest or detention in a motor vehicle. After finding that Morse had prior felonies and used a deadly weapon when committing the new felonies, the jury assessed punishment at 58 years in prison on all four current offenses. On appeal, Morse contends that the trial court abused its discretion by admitting evidence of other offenses that occurred on the day before the offenses for which he was convicted. We will affirm the judgment.

## BACKGROUND

Morse filed a motion in limine seeking to limit the State's use of evidence about an altercation with law enforcement on the day before the charged offenses occurred. Morse asserted that the evidence was improper extraneous offense evidence and that its probative value was

substantially outweighed by the risk of unfair prejudice. *See* Tex. R. Evid. 403, 404(b). The trial court denied the motion in limine, but granted Morse a running objection to the evidence. The court stated that the events of February 11, 2009, in Live Oak County were intertwined with and provided context for the events of February 12, 2009, in Williamson County for which Morse was being tried. The court also stated that the evidence was admissible to show motive, intent, and lack of mistake.

On February 11, 2009, McMullen County Sheriff's Deputy Investigator Jasper McDonald was driving to work in his pickup through Live Oak County when he stopped a truck driven by Morse for having cancelled license plates. McDonald testified that, upon learning that there was a warrant for Morse's arrest, McDonald arrested him, handcuffed him, and began to inventory his truck. Two highway patrol troopers arrived to assist. Meanwhile, Morse maneuvered his cuffed hands to the front of his body, jumped into McDonald's pickup, and drove away. The troopers attempted to stop Morse, but fell away from the pickup as it gained speed. As Morse drove toward him, McDonald ran backwards and fired at the pickup. The officers then got in the troopers' vehicle and pursued Morse to no avail. Morse left the road, went through a fence, and drove cross country. Peace officers later discovered the pickup abandoned early the next morning. An inventory of the pickup appeared to show that Morse had taken one of McDonald's weapons, a .357 revolver.[1] The troopers who stopped to assist confirmed these events through testimony from their perspectives.

United States Probation Officer Jerry Adams testified that Morse had a probation meeting scheduled on the morning of February 12, 2009. Adams testified that Morse called to tell

---

[1] McDonald later discovered that he had left the weapon at his home.

2

him about the Live Oak County incident and to say he would not be attending the meeting. Adams testified that Morse told him he would not go back to jail "no matter what," that he would not hurt anyone, and that he would not be speaking with Adams again. Adams testified that Morse clearly knew that he had committed new offenses in Live Oak County that could lead to his incarceration.

United States Deputy Marshal Darren Sartin testified that he began looking for Morse after hearing about the Live Oak County incident and learning that Morse might be in Austin. He testified that this information affected the way law enforcement would approach Morse. They were seeking Morse on both the preexisting warrant and charges arising from the Live Oak County events. Sartin learned that Morse was going to an apartment complex in northwest Austin just inside Williamson County, and he directed a team of officers to converge on that site. Morse was returning from the apartment to his car, a Dodge Charger, when Sartin arrived.

Deputy United States Marshal Brian Sheely pulled his vehicle up behind Morse's car and activated his flashing emergency lights. Sheely testified that he got out of his vehicle wearing his badge and a bullet-proof vest emblazoned with the words "US Marshal" and a patch badge. Sheely testified that he identified himself as "police" and gave "verbal police commands." Before he could tell Morse to hold his hands up, however, Morse started his car and drove forward over the curb and onto the lawn, maneuvering to return to the parking lot.

Travis County Sheriff's Deputy Ben Wright was forced to jump out of the way to avoid being hit by Morse's car. Sartin testified that, had Wright not moved, Morse would have killed him. Deputy United States Marshal Eric McGill moved his vehicle to block Morse's path and Morse accelerated and rammed his car into McGill's vehicle toward the rear of the side in which the passenger, Austin Police Officer Gil Cardenas, was riding. Morse's car jumped another curb, then

3

crashed into a tree and stopped. Sartin testified that he approached Morse's car, announced that he was a police officer, and told Morse to show his hands. Morse got out of his car and ran despite several officers' repeated commands to stop. Sartin testified that Morse looked right at him and reached toward a front pocket or waistband. Sartin said that he knew that Morse had the previous day fought with police officers, stolen a police car, reportedly taken a .357, and told his parole officer "I'm not going back to jail." In explaining his reasons for shooting Morse, Sartin testified that this recent history, coupled with Morse's ongoing attempts to evade capture, caused Sartin to fear that Morse was going to pull a weapon and harm somebody, including Sartin himself.

Deputy Wright's testimony confirmed that McGill had his lights and sirens on when he pulled behind Morse's car. Wright approached the car commanding Morse to turn the car off and get out. When Morse instead drove his car onto the lawn, Wright ran toward his own vehicle. He then heard Morse accelerating and ran between parked cars to avoid being hit. Wright testified that he was directly in Morse's path and felt he did not have time to pull his gun. Wright saw Morse's vehicle run into McGill's vehicle. He testified that McGill joined the foot pursuit of Morse, but that Cardenas was unable to do so because the crash damage prevented him from opening his door.

Several other witnesses testified, adding their perspectives and details about the event. Other peace officers and residents of the apartment complex testified about the events at the complex. McGill and Cardenas testified that Morse's running his car into their vehicle caused them back and neck pain for which they received treatment and medication for a few days. The general manager of a car dealership in Columbus, Texas testified that a Dodge Charger was stolen from his dealership in October 2008. The vehicle identification number on the stolen car matched the VIN on the Dodge Charger that Morse was driving when apprehended in Williamson County.

4

## ANALYSIS

By his sole point of error, Morse contends that the trial court erred by admitting evidence about the Live Oak County incident in which he escaped police custody one day before his arrest in Williamson County. We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Evidence can nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* R. 403. A trial court's ruling on extraneous offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)).

Even if the court errs in admitting evidence, the record must show that the error harmed the defendant. When reviewing non-constitutional error in a criminal case, the court of appeals must disregard any error that does not affect the substantial rights of the appellant. Tex. R.

5

App. P. 44.2(b); *Sells v. State*, 121 S.W.3d 748, 764 n.69 (Tex. Crim. App. 2003). A conviction should not be reversed when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect. *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

The trial court did not abuse its discretion by admitting the evidence of the Live Oak County events. The court could reasonably have deemed testimony about Morse's escape from custody on February 11 relevant to his motive, intent, plan, or absence of mistake in taking the actions he did on February 12. The evidence of the Live Oak County events could be seen as showing Morse's determination to avoid incarceration in that two-day period rather than a larger comment on his character. It also provided context to explain why law enforcement officers proceeded as they did during the Williamson County arrest. Evidence about the Live Oak County incident did not create a danger of unfair prejudice, confusion of the issues, or misleading the jury. Although the evidence showed Morse had a consistent desire to evade capture, the specifics of the two evasions were distinct. The trial court did not err by admitting the evidence because it could reasonably have decided that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice.

Even if it were error to admit this evidence, there is no showing that the evidence had more than a slight effect on the jury. The jury convicted Morse of aggravated assault on the public servants (McGill and Cardenas) in the vehicle Morse rammed, of driving a stolen vehicle, and of evading arrest, but acquitted him of aggravated assault on the public servant (Wright) who was on foot in the parking lot. This differentiation among the charges shows that the jurors' minds were not so inflamed by the evidence that they were moved to convict on whatever charge was

6

presented. The evidence supporting the convictions was overwhelming and uncontroverted. Even assuming error in admitting evidence of the Live Oak County incident, it did not affect Morse's substantial rights.

The absence of error or harm in the admission of the evidence is even clearer with regard to the punishment phase because the scope of evidence relevant and admissible at the punishment phase is broader than at guilt-innocence. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West Supp. 2010). The court has broader discretion to admit evidence, the evidence's probative value on the broadened scope of relevant issues is greater, and the danger of *unfair* prejudice or confusing or misleading the jury is further reduced. There is no harm shown from the admission of the evidence with regard to the punishment phase.

## CONCLUSION

Finding no reversible error in the admission of the evidence concerning the events in Live Oak County on February 11, 2009, we affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed: July 8, 2011

Do Not Publish

7