TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00168-CR






Douglas Morse, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT

NO. 09-264-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 A jury convicted Douglas Morse of two counts of aggravated assault of a
public servant, one count of unauthorized use of a motor vehicle, and one count of evading arrest or
detention in a motor vehicle. After finding that Morse had prior felonies and used a deadly weapon
when committing the new felonies, the jury assessed punishment at 58 years in prison on all
four current offenses. On appeal, Morse contends that the trial court abused its discretion by
admitting evidence of other offenses that occurred on the day before the offenses for which he was
convicted. We will affirm the judgment.


BACKGROUND


 Morse filed a motion in limine seeking to limit the State's use of evidence about an
altercation with law enforcement on the day before the charged offenses occurred. Morse asserted
that the evidence was improper extraneous offense evidence and that its probative value was
substantially outweighed by the risk of unfair prejudice. See Tex. R. Evid. 403, 404(b). The
trial court denied the motion in limine, but granted Morse a running objection to the evidence. The
court stated that the events of February 11, 2009, in Live Oak County were intertwined with and
provided context for the events of February 12, 2009, in Williamson County for which Morse
was being tried. The court also stated that the evidence was admissible to show motive, intent, and
lack of mistake.

 On February 11, 2009, McMullen County Sheriff's Deputy Investigator
Jasper McDonald was driving to work in his pickup through Live Oak County when he stopped a
truck driven by Morse for having cancelled license plates. McDonald testified that, upon learning
that there was a warrant for Morse's arrest, McDonald arrested him, handcuffed him, and began to
inventory his truck. Two highway patrol troopers arrived to assist. Meanwhile, Morse maneuvered
his cuffed hands to the front of his body, jumped into McDonald's pickup, and drove away. The
troopers attempted to stop Morse, but fell away from the pickup as it gained speed. As Morse drove
toward him, McDonald ran backwards and fired at the pickup. The officers then got in the troopers'
vehicle and pursued Morse to no avail. Morse left the road, went through a fence, and drove cross
country. Peace officers later discovered the pickup abandoned early the next morning. An inventory
of the pickup appeared to show that Morse had taken one of McDonald's weapons, a .357 revolver. (1)
The troopers who stopped to assist confirmed these events through testimony from their perspectives.

 United States Probation Officer Jerry Adams testified that Morse had a probation
meeting scheduled on the morning of February 12, 2009. Adams testified that Morse called to tell
him about the Live Oak County incident and to say he would not be attending the meeting. Adams
testified that Morse told him he would not go back to jail "no matter what," that he would not hurt
anyone, and that he would not be speaking with Adams again. Adams testified that Morse clearly
knew that he had committed new offenses in Live Oak County that could lead to his incarceration.

 United States Deputy Marshal Darren Sartin testified that he began looking for Morse
after hearing about the Live Oak County incident and learning that Morse might be in Austin. He
testified that this information affected the way law enforcement would approach Morse. They were
seeking Morse on both the preexisting warrant and charges arising from the Live Oak County events.
Sartin learned that Morse was going to an apartment complex in northwest Austin just inside
Williamson County, and he directed a team of officers to converge on that site. Morse was returning
from the apartment to his car, a Dodge Charger, when Sartin arrived.

 Deputy United States Marshal Brian Sheely pulled his vehicle up behind Morse's car
and activated his flashing emergency lights. Sheely testified that he got out of his vehicle wearing
his badge and a bullet-proof vest emblazoned with the words "US Marshal" and a patch badge.
Sheely testified that he identified himself as "police" and gave "verbal police commands." Before
he could tell Morse to hold his hands up, however, Morse started his car and drove forward over the
curb and onto the lawn, maneuvering to return to the parking lot.

 Travis County Sheriff's Deputy Ben Wright was forced to jump out of the way
to avoid being hit by Morse's car. Sartin testified that, had Wright not moved, Morse would have
killed him. Deputy United States Marshal Eric McGill moved his vehicle to block Morse's path and
Morse accelerated and rammed his car into McGill's vehicle toward the rear of the side in which the
passenger, Austin Police Officer Gil Cardenas, was riding. Morse's car jumped another curb, then
crashed into a tree and stopped. Sartin testified that he approached Morse's car, announced that he
was a police officer, and told Morse to show his hands. Morse got out of his car and ran despite
several officers' repeated commands to stop. Sartin testified that Morse looked right at him and
reached toward a front pocket or waistband. Sartin said that he knew that Morse had the previous
day fought with police officers, stolen a police car, reportedly taken a .357, and told his parole officer
"I'm not going back to jail." In explaining his reasons for shooting Morse, Sartin testified that this
recent history, coupled with Morse's ongoing attempts to evade capture, caused Sartin to fear that
Morse was going to pull a weapon and harm somebody, including Sartin himself.

 Deputy Wright's testimony confirmed that McGill had his lights and sirens on when
he pulled behind Morse's car. Wright approached the car commanding Morse to turn the car off and
get out. When Morse instead drove his car onto the lawn, Wright ran toward his own vehicle. He
then heard Morse accelerating and ran between parked cars to avoid being hit. Wright testified that
he was directly in Morse's path and felt he did not have time to pull his gun. Wright saw Morse's
vehicle run into McGill's vehicle. He testified that McGill joined the foot pursuit of Morse, but that
Cardenas was unable to do so because the crash damage prevented him from opening his door.

 Several other witnesses testified, adding their perspectives and details about the event.
Other peace officers and residents of the apartment complex testified about the events at the
complex. McGill and Cardenas testified that Morse's running his car into their vehicle caused them
back and neck pain for which they received treatment and medication for a few days. The general
manager of a car dealership in Columbus, Texas testified that a Dodge Charger was stolen from
his dealership in October 2008. The vehicle identification number on the stolen car matched the
VIN on the Dodge Charger that Morse was driving when apprehended in Williamson County.

ANALYSIS


 By his sole point of error, Morse contends that the trial court erred by admitting
evidence about the Live Oak County incident in which he escaped police custody one day before
his arrest in Williamson County. We review trial court rulings on the admissibility of evidence for
abuse of discretion. Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court
abuses its discretion when its ruling is arbitrary or unreasonable. State v. Mechler, 153 S.W.3d 435,
439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its decision is within "the
zone of reasonable disagreement." Bigon v. State, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Id. Evidence can nevertheless be excluded
if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading of the jury. Id. R. 403. A trial court's ruling on extraneous offense evidence
is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous
transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence
is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading of the jury." De La Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing
Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)).

 Even if the court errs in admitting evidence, the record must show that the error
harmed the defendant. When reviewing non-constitutional error in a criminal case, the court of
appeals must disregard any error that does not affect the substantial rights of the appellant. Tex. R.
App. P. 44.2(b); Sells v. State, 121 S.W.3d 748, 764 n.69 (Tex. Crim. App. 2003). A conviction
should not be reversed when, after examining the record as a whole, the reviewing court has a
fair assurance that the error did not influence the jury or had but a slight effect. McDonald v. State,
179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

 The trial court did not abuse its discretion by admitting the evidence of the Live Oak
County events. The court could reasonably have deemed testimony about Morse's escape from
custody on February 11 relevant to his motive, intent, plan, or absence of mistake in taking
the actions he did on February 12. The evidence of the Live Oak County events could be seen as
showing Morse's determination to avoid incarceration in that two-day period rather than a larger
comment on his character. It also provided context to explain why law enforcement officers
proceeded as they did during the Williamson County arrest. Evidence about the Live Oak County
incident did not create a danger of unfair prejudice, confusion of the issues, or misleading the jury.
Although the evidence showed Morse had a consistent desire to evade capture, the specifics of
the two evasions were distinct. The trial court did not err by admitting the evidence because it could
reasonably have decided that the probative value of the evidence was not substantially outweighed
by the risk of unfair prejudice. 

 Even if it were error to admit this evidence, there is no showing that the evidence
had more than a slight effect on the jury. The jury convicted Morse of aggravated assault on the
public servants (McGill and Cardenas) in the vehicle Morse rammed, of driving a stolen vehicle,
and of evading arrest, but acquitted him of aggravated assault on the public servant (Wright) who
was on foot in the parking lot. This differentiation among the charges shows that the jurors' minds
were not so inflamed by the evidence that they were moved to convict on whatever charge was
presented. The evidence supporting the convictions was overwhelming and uncontroverted. Even
assuming error in admitting evidence of the Live Oak County incident, it did not affect Morse's
substantial rights.

 The absence of error or harm in the admission of the evidence is even clearer with
regard to the punishment phase because the scope of evidence relevant and admissible at the
punishment phase is broader than at guilt-innocence. See Tex. Code Crim. Proc. Ann. art. 37.07
§ 3(a)(1) (West Supp. 2010). The court has broader discretion to admit evidence, the evidence's
probative value on the broadened scope of relevant issues is greater, and the danger of unfair
prejudice or confusing or misleading the jury is further reduced. There is no harm shown from the
admission of the evidence with regard to the punishment phase.


CONCLUSION


 Finding no reversible error in the admission of the evidence concerning the events
in Live Oak County on February 11, 2009, we affirm the judgment.


   

 Jeff Rose, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed: July 8, 2011

Do Not Publish
1. McDonald later discovered that he had left the weapon at his home.