# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00730-CR

**Johnny Gabriel Castro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. D-1-DC-12-904069, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Johnny Gabriel Castro guilty of capital murder and two other offenses related to the death of his then-girlfriend's seven-month-old daughter. The jury assessed a punishment of life in prison for capital murder and also assessed punishments of sixty years in prison for the offenses of felony murder and injury to a child. The trial court ordered that these sentences run concurrently. Appellant contends that the trial court erred by refusing to hold a hearing on his amended motion for new trial and by allowing that motion to be overruled by operation of law. He urges that we either abate for a hearing on the motion or grant the motion outright. He also contends that the evidence is insufficient to show that he acted intentionally or knowingly in injuring and killing the child and that this Court should, therefore, (1) reverse the conviction for capital murder and render an acquittal and (2) reverse the conviction for injury to a child and remand for a new hearing on punishment. He argues alternatively that the convictions and sentences for capital murder and murder of the same child violate the constitutional prohibition of

multiple punishments for the same offense and that we should vacate the murder conviction. We will affirm the capital murder conviction, vacate the murder conviction and sentence, and affirm the judgment in all other respects.

## BACKGROUND

The child victim was born in July 2010 to her mother, Veronica, who began dating appellant about two months later.[1] By February 2011, appellant, Veronica, and the child were essentially living together in a succession of different relatives' homes. Veronica testified that appellant and her daughter bonded at first. As time went by, she said, that bond frayed. She testified that appellant criticized the child daily as spoiled and jealous of him. Veronica testified that appellant did not like when the baby cried and believed that Veronica should not have consoled the crying child, but rather should have ignored her or disciplined her. Veronica said that once, when the three were riding in a car together, appellant attempted to put his hand over the crying baby's mouth. Veronica testified that she stopped him from doing so, but when they arrived at home appellant blocked her access to the baby, yelled at the baby, and tried again to cover the baby's mouth.

The weekend before February 28, 2011, appellant, Veronica, and her baby stayed with appellant's aunt. Veronica said that she and the baby slept in the aunt's daughter's room and that appellant slept on the couch, although appellant's aunt testified that appellant slept in the bedroom. Appellant's aunt also testified that the baby had bite marks on her arm that appellant confessed to inflicting, although the aunt believed that the marks were more likely inflicted by Veronica.

---

[1] Appellant was not this child's father, although he later referred to himself as such.

2

Veronica testified that on February 28, 2011, the child had mild diarrhea, but was not too fussy. She said that she woke up and gave the baby a bottle and played with her for about an hour in the living room. Veronica testified that this apparently disrupted appellant's sleep because, when she took the baby back to the bedroom for a nap, appellant burst[2] into the room and said, "If I can't sleep, no one in this house can sleep." She said he continued to yell to make sure the baby stayed awake.

Veronica had a job interview that afternoon at 1:30 and intended to leave her child with her grandmother who lived near the interview site. Appellant drove Veronica to the interview, arriving slightly late. As Veronica walked toward the office building, appellant volunteered to keep the child rather than dropping her at Veronica's grandmother's apartment. Veronica assented even though appellant had never taken care of her daughter by himself. Appellant's aunt testified that appellant had helped raise his brothers and sisters and that it was not unusual for him to change a diaper.

Veronica finished her interview around 3 p.m. and called appellant to come pick her up. She said he told her that her daughter had fallen asleep and that he would come pick her up. Less than fifteen minutes later, appellant called back and said that the child was blue and he repeatedly said that he did not know what to do. Veronica told him to call 911 then went to the hospital with her grandmother. Veronica testified that she thought it strange that, when she called appellant again, he asked that she come see him instead of going to the hospital to be with her child.

---

[2] On cross-examination, Veronica conceded that she did not tell police that appellant "burst" into the room. She testified that she omitted that aspect initially because she did not then believe that appellant had killed her daughter and had not wanted to say things that might get him wrongly convicted.

A firefighter testified that he arrived at appellant's aunt's house at 3:25 p.m. and found the baby limp, not breathing, and without a pulse. He administered cardiopulmonary resuscitation until emergency medical technicians arrived. A second firefighter testified that appellant said that when he went to wake the baby, he found her lying facedown in a pillow on the bed. Paramedics were able to restore a pulse that improved as they went to the hospital.

At the hospital, however, Veronica learned that her child's brain had swollen to the point that the child was unlikely to survive. Tests the next morning confirmed that the child had no brain activity. After family members held the child and said goodbye, life support was removed, and the child died.

The medical director of the pediatric intensive care unit at Dell Children's Hospital, Rene Higgerson, testified that the child's respiration was irregular even with the ventilator. She found no external evidence of injury, no skeletal trauma, no bruising and no bleeding in the child's eyes or brain. She also found no sign of respiratory illness or influenza. Higgerson testified that she would expect a developmentally appropriate seven-month-old child to resist intentional suffocation and to be able to avoid suffocating accidentally absent unusual circumstances. She testified that it is possible to suffocate someone to the point that death is not immediate, but follows when the person's injured brain swells too much. Another pediatrician, Dr. George Edwards, testified that irreversible brain damage can occur after as little as two minutes without oxygen.

Travis County Deputy Medical Examiner Dr. Satish Chundru performed the autopsy and found faint bruises on the front side of the child's abdomen and on her forehead. He testified that the bruising might have become visible after the child's death. He testified that the abdominal bruising might have come from a person pressing his thumbs into the child's side. He conceded that

4

the bruising might be consistent with someone trying to wake the child. He also testified that the forehead bruising might be consistent with an accidental head butt while shaking the child or while forcing her head into an adult's shoulder or chest in an attempt to soothe or quiet the child.

Veronica testified that appellant told her "multiple, multiple stories" about what happened with the child. She said that appellant told her on the day of the incident that he did not know what had happened. She said he later told her he was in the bathroom and heard a thud when the child fell off of the couch. Appellant reported that he squeezed the child to comfort her. She recalled appellant saying another time that he fell asleep with the baby on the couch and accidentally suffocated her, and also told a similar story saying they fell asleep on the bed. The jury saw a text from appellant's phone telling Veronica that the baby "did pass in my arms and i didnt kno it. But im truly sorry for our babygurl and sorry that it was me."[3]

Police officers testified that, although they did not originally believe that appellant intentionally killed the child, his conduct—including his manner during questioning and his changing stories—led them to believe that he did. Austin Police Department Detective Kerry Scanlon said that appellant originally told him that he gave the baby a bottle, moved all the pillows and blankets off of the bed, and put the child on the bed. Scanlon said appellant told him that he did not sleep with the baby that afternoon. Scanlon said that appellant told him that Veronica called him at 3:05 p.m., he packed the car, and then he found the baby blue and called Veronica. Scanlon testified that he was surprised that appellant took twelve minutes between these telephone calls. He said that appellant was matter-of-fact in the interview and referred to the baby as jealous and spoiled. APD Detective Brent Bailey testified that appellant's phrasing when discussing the

---

[3] Spelling, capitalization, and punctuation are as presented in the exhibit.

5

crucial events surrounding the baby's death undercut his credibility. Bailey testified that appellant first said that nothing happened, then drastically changed his story. Bailey also said that appellant mentioned injuries to the child's forehead and abdomen—the areas where faint bruises found by the medical examiner were not seen by the treating physicians. APD Detective Anthony Nelson testified that appellant said that he held the baby too tight and that she stopped breathing, but that he thought she was breathing after he laid her down. Nelson said that appellant was controlling and thought that police were following him when they were not. In the March 8, 2011 interview with police, when asked how he thought the child died appellant said, "She suffocated." When asked how, appellant said, "I was holding her too tight. . . . She slowly stopped her breathing. I had her. Her face was in my shoulder." He also said. "It was not intentionally. I would not hurt that baby. . . . I'm not saying I killed her."

After the jury found appellant guilty and the punishment was assessed on October 12, 2011, appellant filed a motion for new trial that same day asserting generally that the verdict was against the law and evidence and that a new trial was in the interest of justice. On November 1, 2011, appellant filed an amended motion for new trial stating that a material defense witness, Brittany Banda, was kept from testifying at trial by force or threats. *See* Tex. R. App. P. 21.3(e). Appellant attached Banda's affidavit to his motion. Banda stated that she stopped by the house where appellant was staying and overheard him attempting to soothe the crying baby. She said that she went in the house and that appellant told her that the baby had fallen. She stated that the baby, who fell asleep while they were talking, looked pale as if sick. She stated that appellant told her that the baby had been sick but that Veronica did not take her to the doctor. Banda stated that appellant also told her that he wanted to end his relationship with Veronica, but that Veronica told him she

6

would hurt herself and the baby if he did. Banda said that appellant laid the baby on the bed and that they talked in the living room for a while longer. She stated that, when appellant went to check on the baby, they noticed that she was a light blue color. Appellant panicked and grabbed the child, attempting to wake her, and told Banda to leave, which she did. Banda said that she would have presented this evidence at the trial but for the fact that she was threatened and told not to testify by others, including her own child's father. The motion for new trial was overruled without a hearing and by operation of law.

## DISCUSSION

Appellant contends that the trial court erred by refusing to hold a hearing on his amended motion for new trial and by allowing that motion to be overruled by operation of law. He also argues that he should be acquitted of capital murder because the evidence is legally insufficient to show that he acted intentionally or knowingly in causing the child's death. He argues further that we should reverse the finding of an intentional-or-knowing mental state with respect to the injury-to-a-child conviction and remand for a sentence within the range appropriate for that offense with a less culpable mental state. He also contends that the convictions for capital murder and murder of the same child violate the constitutional prohibition of multiple punishments for the same offense.

**The trial court did not abuse its discretion by overruling the motion for new trial without holding a hearing on that motion.**

While appellant contends that the trial court should have held a hearing on his motion for new trial, the State contends that appellant did not preserve this issue for appellate review.

The trial court need not conduct a hearing if the motion for new trial is not timely presented to the trial court. *See* Tex. R. App. P. 21.6 (requiring defendant to present motion for new

7

trial to trial court within 10 days of filing); *see also Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) (right to hearing on motion for new trial is not absolute); *Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.). The presentment requirement directs a defendant to do more than simply file the motion for new trial with the trial court clerk. *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009). This requirement is intended to ensure that the defendant puts the trial court on actual notice that he wants the trial court to take some action on the motion for new trial such as a ruling or a hearing on it. *Id.*

Presentment may be proven in many ways, including by showing the judge's signature or notation on the proposed order or court's docket sheet or a ruling on the motion. *See Stokes*, 277 S.W.3d at 24-25; *Carranza v. State*, 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998); *Rodriguez v. State*, 425 S.W.3d 655, 662-63 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The presentment must be directed to the trial court or another authorized to act on behalf of the trial court. *Carranza*, 960 S.W.2d, at 79. Presentation of a motion to the court coordinator can satisfy the presentment requirement. *Estrella v. State*, 82 S.W.3d 483, 485-86 (Tex. App.—San Antonio 2002, pet dism'd); *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Examples of evidence that the court of criminal appeals has found sufficient to show presentment include notes on court-generated documents like docket sheets, which are most likely made by court personnel and demonstrate court knowledge of the motion and thus presentment of the motion—though a judge's signature is not required. *Stokes*, 277 S.W.3d at 24-25. In *Estrella*, the San Antonio court found that a court coordinator's filling out a "case setting form" and setting the case for a hearing satisfied the presentment requirement sufficiently to allow the court to consider whether the motion for new trial merited a hearing. 82 S.W.3d at 486. In *Butler*, the defendant informed the court coordinator about

8

his timely filed motion for new trial and asked for a hearing, the court coordinator made an entry in the case management system scheduling the hearing, and the court of appeals found that Butler had sufficiently shown presentment of the motion. 6 S.W.3d at 638.

Case law also provides examples of what evidence does not show presentment. The court of criminal appeals wrote, "An unsigned notation on [a proposed order] cannot confidently be attributed to the court." *Stokes*, 277 S.W.3d at 24. The Dallas Court of Appeals held that a counsel's "Certification of Service and Presentment" stating that the motion was presented to the trial judge did not sufficiently prove presentment. *See Owens v. State*, 832 S.W.2d 109, 111 (Tex. App.—Dallas 1992, no pet.). The *Owens* court noted the absence of a proposed order setting a date on a hearing on the motion, of a separate motion for a hearing, and of any written notation that the motion was ever actually presented to the court or that the court was ever put on notice that the appellant wanted a hearing. *Id.* Relying on *Owens*, this Court held that "a self-serving statement by defense counsel, without more, is not sufficient evidence of presentment to the trial court." *Oestrick v. State*, 939 S.W.2d 232, 235 n.3 (Tex. App.—Austin 1997, pet. ref'd).

Appellant cites two actions he contends show proper presentment. He included a Certificate of Presentment below his attorney's signature line on Defendant's Amended Motion for New Trial, filed on November 1, 2012. This printed certificate states that the attorney presented the motion to the court by delivering a copy to the court coordinator. Appellant also attached a proposed order setting a hearing to his motion. On November 15, 2002, appellant filed a proposed Order Denying Defendant's Amended Motion for New Trial Without an Evidentiary Hearing. On this printed and unsigned order, appellant's attorney handwrote the following note: "Nov. 15, 2012—presented this proposed order to court coordinator, who presented it to J. Kennedy. Judge

9

indicated she would let 75-day period elapse and did not sign proposed order." Appellant's attorney signed this handwritten statement and the clerk file-stamped the proposed order containing it.

The State contends that appellant did not show that he timely and properly presented the amended motion to the trial court and, therefore, did not preserve the failure to hold a hearing as an issue reviewable on appeal. The State argues that both the certification and the handwritten note are self-serving statements by defense counsel. The State also contends that the note written on a copy of a proposed order denying a hearing does not show presentment of the motion itself and, because it is dated November 15, does not show presentment of the motion for new trial within ten days of filing. The State argues that appellant did not preserve the hearing issue because he did not obtain a ruling or object to the refusal to rule on his request for a hearing. *See* Tex. R. App. P. 33.1(a)(2). "Where a motion for new trial is overruled by operation of law, the trial court's failure to conduct a hearing, without more, is simply a 'failure to rule' on the request for a hearing," and the claim is preserved for review only if the defendant has objected to the failure to rule. *Oestrick*, 939 S.W.2d at 235.

We conclude that appellant has not preserved for appellate review any error in the trial court's failure to hold a hearing on the motion for new trial either through objection or timely presentment of the motion for new trial. Appellant's motion for new trial was overruled by operation of law and the record does not contain any objection by appellant to the failure to conduct a hearing. *See id.* Neither the November 1 Certificate of Presentment nor the handwritten November 15 note shows timely presentment of the motion for new trial under existing case law. The November 1 Certificate of Presentment provides, "I certify that I am counsel for the defendant in this case and that I presented this motion to the trial court pursuant to Tex. R. App. P. 21.6 by delivering a copy

10

to the court coordinator for the 403rd District Court on November 1, 2012." This certification is similar to the statement in the Certification of Service & Presentment that was part of the motion for new trial in *Owens* that "[t]he undersigned attorney for Defendant hereby certifies to the Court that true and correct copies of the foregoing were presented to the Trial Judge . . . ." *Owens*, 832 S.W.2d at 111. The *Owens* court deemed this certification "no evidence" of presentment. *Id*.; *see also Oestrick*, 939 S.W.2d at 235 n.5 (disregarding as insufficient evidence of presentment "a statement in appellant's notice of appeal that the motion for new trial was presented to the court 'through counsel.'"). Appellant's counsel's November 15 handwritten note on the unsigned proposed Order Denying Defendant's Amended Motion for New Trial Without an Evidentiary Hearing stating that the order had been presented to the judge by the court coordinator was made three days after the ten-day period for presentment lapsed.[4] *See* Tex. R. App. P. 21.6; *see also id.* 4.1(a). Further, this notation is by a party on a party-generated document rather than a note on a court-generated document like a docket sheet or written by the judge or court personnel—distinctions that weigh against a showing that the motion was presented to the trial court.[5] *See Stokes*, 277 S.W.3d at 24-25; *Carranza*, 960 S.W.2d at 80 n.6.

---

[4] The rule permits the court to exercise discretion to allow presentment of the motion for new trial more than ten days after the motion is filed (but less than 75 days after the sentence is imposed), Tex. R. App. P. 21.6, and the November 15 notation was filed within that window. But, after the initial ten-day period, the rule by its own terms makes the court's decision of whether to allow presentment discretionary. *See id.* There is no showing that the trial court abused its discretion in choosing not to permit presentment of the motion.

[5] We are not accusing appellant's counsel of dishonesty in his handwritten note, but are applying the standards set out by the court of criminal appeals regarding the nature of the proof necessary to show presentment to that note. *Stokes v. State*, 277 S.W.3d 20, 25 (Tex. Crim. App. 2009); *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998).

11

The record does not show that appellant timely presented his motion for new trial to the trial court or objected to the trial court's failure to hold a hearing. Appellant has not shown that the trial court erred or abused its discretion by failing to hold a hearing on his motion for new trial. *See Stokes*, 277 S.W.3d at 24-25; *see also Oestrick*, 939 S.W.2d at 235.

**The evidence is sufficient to support the findings that appellant acted knowingly or intentionally.**

Appellant argues that the State failed to show that he had the requisite intent when he injured and killed the child.[6] The court instructed the jury on the following culpable mental states relating to the offenses in this case:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
>
> (d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the

---

[6] Appellant can challenge the sufficiency of the evidence supporting his guilt even if his testimony at the punishment phase might relate to the elements of the offense. *See Jacobson v. State*, 398 S.W.3d 195, 202 (Tex. Crim. App. 2013).

result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03. The court instructed the jury that a person commits murder when he intentionally or knowingly causes the death of another and that, if the murderer knows that the victim is under six years old, the offense is capital murder. *See id.* § 19.02(b)(1), .03(a)(8). The court also instructed the jury that a person commits the offense of injury to a child when he intentionally or knowingly causes serious bodily injury to a child aged fourteen years or younger. *See id.* § 22.04.

When reviewing the sufficiency of the evidence supporting a conviction, we consider all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and a defendant's guilt can be established with circumstantial evidence alone. *Temple*, 390 S.W.3d at 359. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In circumstantial-evidence cases, every fact need not point directly and independently to the guilt of the defendant; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* at 49. The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Jackson*, 443 U.S. at 319. When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Temple*, 390 S.W.3d at 360 (citing *Jackson*, 443 U.S. at 326).

13

Appellant cites the police officers' admission that, despite intense questioning, he never said that he intentionally killed the child. He contends that he was only reckless or criminally negligent when he held the child too tightly—levels of culpability that do not satisfy the murder or capital murder charges given in this case. *See* Tex. Penal Code §§ 19.02(b)(1), .03(8). When squarely presented with the choice of culpability levels, however, the jury determined otherwise.

There was evidence that appellant favored a more physically aggressive method of quieting the child. Veronica testified that she and appellant had an ongoing disagreement over how to handle the child when she cried. Veronica said she preferred to comfort the crying child, but appellant advocated ignoring the child. Veronica testified about an incident in a car when appellant tried to place his hand over the child's mouth to stop her crying. Veronica said that she grabbed appellant's hand to discourage him from touching the child but, when they arrived at their destination, appellant got out of the car, blocked Veronica from the backseat, yelled at the child, and covered her mouth with his hand.

The record also contained evidence that appellant's relationship with the child was deteriorating. There was testimony that appellant and the child had bonded early on, but that the child eventually seemed not to want to be around appellant. Veronica and Detective Scanlon testified that appellant described the child as spoiled and jealous of him. Veronica also testified that appellant had been angry at her and the child that morning for interrupting his sleep. Nevertheless, when appellant took Veronica to her job interview, appellant abruptly changed the childcare plan to keep the child by himself for the first time. What happened next is, as discussed above, the subject of many different stories by appellant. In one of these variations, appellant told Detective Nelson that he held the baby too tight, that she stopped breathing in his arms, and that she died in his arms.

14

The medical evidence supported a finding that the child suffocated. The examiner found that the child's brain was deprived of oxygen, which led to her death. Although the physicians could not say what caused the child to suffocate, Dr. Higgerson testified that she would not expect a developmentally appropriate seven-month-old—and the only evidence is that this child was progressing at least normally—to suffocate accidentally absent unusual circumstances. Dr. Higgerson also testified that she would expect a seven-month-old child to resist being suffocated. Although Dr. Higgerson said she did not find any bruises on the child, the medical examiner Dr. Chundru reported bruising on the child's sides consistent with being squeezed by someone who pressed their thumbs in. Dr. Edwards testified that irreversible brain damage can occur after two minutes without oxygen.

Appellant told police that he loved the child and did not intend to hurt her. He at times insisted that the child was still breathing when he left her and gave alternate theories on how the child might have died other than by his hand. The jury heard all of the testimony and, as the sole judge of credibility, found his denials not credible. *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that appellant intentionally or knowingly injured and killed the child.

**Conviction for murder in addition to the punishment for capital murder of the same child violates double-jeopardy prohibition.**

Appellant complains that the trial court violated the constitutional prohibition of double jeopardy because it assessed punishments for capital murder and for the lesser-included offense of murder based on the same actions against the same child. *See* U.S. Const. amend. V;

Tex. Const. art. I, § 14.  The State agrees that, if we determine that murder is a lesser-included offense of capital murder, we should vacate the conviction for the lesser offense.

We conclude that, as charged, murder is a lesser-included offense of capital murder. *See Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (felony murder); *see also* Tex. Penal Code §§ 19.02, .03.  The jury assessed a term of life in prison without parole for the capital murder conviction and a lesser term of sixty years in prison for the murder conviction.  We therefore vacate the judgment of conviction for the lesser-included offense of murder without regard to the merits or the sufficiency of the supporting evidence.  *See Bigon v. State*, 252 S.W.3d 360, 372-73 (Tex. Crim. App. 2008).  Contrary to appellant's request that we render judgment of acquittal on the murder charge, we conclude that we are authorized only to vacate the murder conviction and the related sentence.  *See id.*

## CONCLUSION

We vacate the conviction and sentence for the lesser-included offense of murder and affirm the judgment in all other respects.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed in part; Vacated in part

Filed:  March 13, 2015

Do Not Publish

16