

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00140-CR
_____

VINCENT RAY JACKSON, JR., APPELLANT

V.

STATE OF TEXAS, APPELLEE

On Appeal from the 32nd District Court
Nolan County, Texas
Trial Court No. 12,317; Honorable Glen Harrison, Presiding

October 16, 2018

OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Pursuant to a plea of guilty before the trial court, without a recommendation as to punishment, Appellant, Vincent Ray Jackson, Jr., was convicted of possession of a controlled substance, to-wit: methamphetamine, in an amount of one gram or more but less than four grams[1] and sentenced to eight years confinement in the Institutional

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2017).

Division of the Texas Department of Criminal Justice. In addition, Appellant was assessed a fine of $1,000, court costs of $423, attorney's fees of $1,800, restitution to the Texas Department of Public Safety Crime Laboratory of $180, and a Crime Stoppers fee of $50. By two issues, Appellant contends the trial court (1) erred by admitting evidence of an extraneous offense and (2) abused its discretion in the assessment of sentence. We agree, in part, that the trial court abused its discretion in the assessment of sentence, modify the judgment to delete the imposition of certain financial penalties, and affirm the judgment as modified.[2]

BACKGROUND

On November 9, 2016, Agent Shawn Lewis of the Criminal Investigations Division of the Texas Department of Public Safety conducted an undercover controlled buy of 3.34 grams of methamphetamine from Appellant. The buy occurred at Appellant's residence in Sweetwater, Nolan County, Texas. Because the buy was made in connection with an on-going investigation, no arrest was made at that time.

In July 2017, Brian Davis, a licensed peace officer with the Sweetwater Police Department, received a report that a male and female in a black vehicle with a broken windshield had attempted to pass two counterfeit $20 bills at a local drive-in restaurant. A short time later, Officer Davis located a vehicle matching the description given and he approached the vehicle. As he approached, two males were attempting to leave the vehicle. Appellant was seated in the front passenger seat. Two counterfeit $20 bills were

---

[2] This case was transferred to this court from the Eleventh Court of Appeals—Eastland, pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We have applied precedent from that court where applicable. *See* TEX. R. APP. P. 41.3.

obtained by Officer Davis from the center console of the vehicle and Appellant handed an additional eight counterfeit $20 bills to another officer at the scene.

A subsequent search of the vehicle revealed two fix-blade knives (one of which was shown to have been stolen), two coin collections, and additional counterfeit money.[3] The search of the vehicle also revealed, in the vicinity of the front passenger's seat, two syringes containing a clear, liquid substance. Subsequent laboratory results revealed that the syringes contained 0.65 grams of methamphetamine.

Appellant was charged with the offense of possession of a controlled substance in conjunction with the November 9, 2016 transaction with Agent Lewis and two counts of forgery. On March 5, 2018, in exchange for an "open plea" of guilty (a plea without a recommendation as to punishment), the State agreed to dismiss the two forgery cases and it further agreed not to proceed to indictment on another charge of possession of a controlled substance in conjunction with the two syringes. In addition to his plea of "guilty," a judicial confession of guilt was admitted into evidence. The trial court accepted Appellant's plea, adjudicated him guilty, and scheduled a punishment hearing for March 27th.

At the punishment hearing, the State offered evidence concerning the circumstances surrounding Appellant's arrest, including seizure of the knives, coin collections, and counterfeit money. The trial court admitted each of those items into

_____

[3] The additional counterfeit money consisted of three counterfeit $20 bills, nine $100 bills with the words "for motion picture use only" written on them, and thirty-three $100 bills with the words "for cinema use only" written on them.

evidence over Appellant's relevance objection. The trial court also admitted the two syringes and the lab analysis over Appellant's relevance objection.

In addition, the trial court heard evidence regarding a forged check in the amount of $450 made payable to Appellant. A police investigation revealed that the account holder of the check did not know Appellant, had not issued a check payable to him, and did not sign the check in question. The police were able to determine that the check was cashed by Appellant and also secured a photo of him cashing the check, along with a copy of his driver's license.

The trial court also heard evidence, without objection, concerning two prior felony offenses for which Appellant had received deferred adjudication—a 2003 order for the third degree felony offense of possession of a controlled substance and a 2013 order for the state jail felony offense of theft. Appellant also testified at his punishment hearing. During his testimony, he admitted selling Agent Lewis methamphetamine in November 2016; however, he denied that he had anything to do with any attempt to pass the counterfeit money. He did admit he was a passenger in the suspect vehicle; however, he denied any knowledge concerning the two syringes and claimed he was unaware of their presence in the vehicle. He further admitted while some of the counterfeit money was in his possession, it had been given to him as payment from a third party for mowing lawns and trimming trees. He further denied having any involvement with the burglary where one of the knives was allegedly stolen. As to the $450 forged check, Appellant claimed that it was payment for a television set he had posted for sale on the Internet.

Appellant filed an application for probation and requested that the trial court release him on conditions of community supervision. The State, on the other hand, requested that the court sentence him to the maximum sentence of ten years in prison.

EXTRANEOUS OFFENSES—ISSUE ONE

By his first issue, Appellant contends he was harmed when the trial court admitted and considered, during the punishment phase of his trial, evidence of extraneous offenses not rationally attributable to him. Specifically, he complains about the admission of the two knives, coin collections, and counterfeit money. As to the knives, he contends the evidence is insufficient to "link" him to the knife that was reported stolen. He also contends the coin collections should not have been admitted because there was no evidence they had ever been reported stolen, and as to the counterfeit money, he contends the "affirmative links" are insufficient because the contraband was not on his person or subject to his exclusive possession at the time of its seizure.

An argument that evidence is not "rationally attributable" to a defendant, or that evidence is not "linked" to an accused is distinguishable from an objection that evidence is not relevant. Evidence is "relevant" if it has *any* tendency to make a fact more or less probable than it would have been without that evidence, so long as the fact in question is of consequence in determining the action. TEX. R. EVID. 401. The strength or weakness of the evidence is not a matter of *relevance* if it meets that criteria. The fact that *relevant* evidence may have weak or limited probative value is more appropriately the subject of a Rule 403 objection. *See* TEX. R. EVID. 403 (providing that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice,

5

issue confusion, potential for deception (misleading), undue delay, or needless presentation of cumulative evidence).

At trial, Appellant objected to the *relevance* of the questioned evidence; however, on appeal, he argues its weight and probative value. Because his arguments on appeal do not comport with the objection he made at trial, he has failed to preserved error for appellate review. *See Wilson v. State,* 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

However, even if we were to construe Appellant's objection at trial as encompassing the arguments he makes on appeal, we would still not find a sufficient basis for reversal because a trial court has "wide discretion to determine the admissibility of evidence at the punishment phase." *Munguia v. State,* No. 11-16-00048-CR, 2018 Tex. App. LEXIS 1084, at *3 (Tex. App.—Eastland Feb. 8, 2018, no pet.) (mem. op., not designated for publication). This is because section 3(a)(1) of article 37.07 of the Texas Code of Criminal Procedure provides as follows:

> [r]egardless of the plea and whether the punishment be assessed by the judge of the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018).

Furthermore, as an appellate court, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810

6

S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). Under this broad standard, we cannot say the trial court abused its discretion in admitting any evidence pertaining to the circumstances of Appellant's arrest (encompassing the knives, coin collections, and counterfeit money) or the extraneous offense pertaining to the $450 forged check. Issue one is overruled.

PUNISHMENT ASSESSED—ISSUE TWO

By his second issue, Appellant contends the trial court abused its discretion by sentencing him to penitentiary time rather than community supervision and rehabilitation. In making this argument, Appellant does not claim any fundamental error exists with respect to the sentence imposed. Instead, he merely contends that he has a drug problem that would be better addressed by rehabilitation-centered community supervision.

A trial court's sentencing order is subject to review by an appellate court under an abuse of discretion standard. *See Jackson v. State,* 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Moore v. State*, No. 11- 13-00050-CR, 2014 Tex. App. LEXIS 13318, at *5 (Tex. App.—Eastland Dec. 11, 2014, no pet.) (mem. op., not designated for publication). As a general rule, a trial court's sentence will not be disturbed if that sentence is within the statutory range of punishment for the offense in question because such a sentence complies with the objectives of the penal code. *Jackson,* 680 S.W.2d at 814.

Although Appellant accepted responsibility for the offense for which he entered a plea of guilty, the evidence showed a high probability that he was associated with, if not actively engaged in, other criminal activity. He also testified to his inability to theretofore overcome his drug addiction, even though he had been subject to deferred adjudication community supervision during the time he was suffering from that addiction. In addition, the offense prosecuted was for the third degree felony offense of *possession* of a controlled substance, whereas the evidence established that he had engaged in the second degree felony offense of *delivery* of a controlled substance. Furthermore, as a part of his open plea, the State agreed to dismiss two pending forgery cases and not proceed to indictment on another charge of possession of a controlled substance in conjunction with the two syringes found in the immediate vicinity of Appellant's location in the vehicle when it was searched. Under these circumstances, it cannot be said that the trial court abused its discretion in assessing a period of confinement within the statutory range of punishment in lieu of granting Appellant's request for community supervision.

That being said, the trial court did abuse its discretion in accessing certain financial obligations not properly a part of Appellant's sentence. Immediately following the punishment phase of trial and the arguments of counsel, the trial court orally pronounced that Appellant be sentenced to "eight years confinement in the Texas Department of Criminal Justice, a fine of $1,000 plus court costs, and attorney's fees of [Appellant's court-appointed defense counsel] to be reimbursed to the County." The final judgment, however, ordered eight years confinement, a $1,000 fine, $423 in court costs, $1,800 in attorney's fees, $180 "restitution," and $50 for a Crime Stoppers fee.

While the record reflects that at both the trial and appellate stages of this proceeding the trial court found "[Appellant] does not meet the indigency standards of this Court," in both instances the trial court also found that it was in "the interest of justice" to appoint counsel to represent Appellant. The judgment of the trial court attempts to assess those fees against Appellant. In order to assess attorney's fees against a defendant following conviction, a trial court must determine that the defendant has sufficient financial resources that enable him to offset in whole or in part the costs of legal services provided. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2018). The trial court's findings in this case fall short of that requirement because a finding that one "does not meet the indigency standards of this Court" is not the same as a finding that one has the present ability to pay, in whole or in part, the sum assessed.[4] Furthermore, because there is no evidence of record demonstrating that Appellant's present financial resources were sufficient to meet that standard, the trial court erred in ordering the repayment of those fees.[5] *See Mayer v. State*, 309 S.W.3d 552, 556-57 (Tex. Crim. App. 2010) (trial court judgment modified to delete unauthorized attorney's fees and affirmed as modified).

---

[4] In his *Concurring and Dissenting Opinion,* Chief Justice Quinn takes issue with this statement based on what he determines to be an implicit finding that Appellant had some financial means or resources with which to employ an attorney because, after committing Appellant to eight years of incarceration, the trial court checked a paragraph on a printed form that ordered him to "report to the Office of Court Collections and make payments . . . not to exceed $500." Chief Justice Quinn then speculates that evidence "most likely exists" and that "it was more likely than not that the trial court had evidence before it when deciding whether appellant was indigent." Irrespective of what we might speculate the evidence was, the fact remains the trial court did not make a determination that Appellant had financial resources that enabled him to offset in part or in whole the costs of the legal services provided.

[5] The only evidence of record indicating Appellant's ability to pay is his *Application for Court Appointed Attorney,* where he declares "under penalty of perjury" that he receives no income and no public assistance, is unemployed, is disabled, supports himself through the assistance of his mother, father, and a friend, and owns only $300 in assets.

Accordingly, the judgment of the trial court is modified to delete any obligation to pay attorney's fees.

The judgment also attempts to assess a $50 fee for Crime Stoppers. Section 133.102 of the local government code requires a person convicted of a felony to pay a consolidated court cost of $133. TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2018). That statutory provision uses percentages to allocate the $133 cost to several accounts and funds. § 133.102(e). Those accounts include funds for "crime stoppers assistance" and "compensation to victims of crime." § 133.102(e)(1), (e)(8). Because section 133.102 assesses a percentage of the consolidated court costs to the compensation of victims of crime, it is inappropriate to assess a separately-charged fee to Crime Stoppers. *See* § 133.102(a)(1), (e)(1), (e)(8). *See also Smith v. State,* No. 02-16-00412-CR, No. 02-16-00413-CR, 2017 Tex. App. LEXIS 4810, at *4-5 (Tex. App.—Fort Worth May 25, 2017, pet. ref'd) (mem. op., not designated for publication); *Aviles-Barroso v. State*, 477 S.W.3d 363, 398-99 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Owen v. State,* 252 S.W.3d 542, 548 n.10 (Tex. App.—Amarillo 2011, no pet.). Accordingly, the judgment of the trial court is modified to delete any obligation to pay the $50 Crime Stoppers fee.

Finally, the judgment attempts to assess a $180 fee for "restitution" to the Texas Department of Public Safety Crime Laboratory, presumably for the cost of testing the controlled substance the subject of the State's prosecution. A trial court has no authority to order a defendant to reimburse the Texas Department of Public Safety for lab fees as a part of his sentence, and such fees are not properly the subject of a restitution order under article 42.037(a) of the Texas Code of Criminal Procedure. *See Aguilar v. State,*

279 S.W.3d 350, 353 (Tex. App.—Austin 2007, no pet.). *See also* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West 2018). As such, the judgment of the trial court is further modified to delete any obligation to pay $180 restitution.

In sum, issue two is sustained, in part, and the judgment of the trial court is reformed to delete any obligation to pay attorney's fees of $1,800, a Crime Stoppers fee of $50, and restitution to the Texas Department of Public Safety Crime Laboratory of $180. The trial court is ordered to prepare and file a *Judgment Nunc Pro Tunc* reflecting these reformations and the trial court clerk is ordered to provide a copy of that judgment to the Institutional Division of the Texas Department of Criminal Justice.

CONCLUSION

As reformed, the judgment of the trial court is affirmed.


Patrick A. Pirtle
Justice


Publish.